HORACIO HUGO CAMPOLIETO BIELICKI y OTRA, demandantes y recurridos, *v.* ALFONSO ANAYA PORTUONDO y OTRA, demandados y recurrentes.

*Número:* RE-93-22          *Resuelto:* 4 de marzo de 1998

*Jorge Segurola*, de *Goldman, Antonetti, Ferraiuoli & Axtmayer*, y *Peter John Porrata*, abogados de la parte recurrente; *Julie Anne Crosby San Miguel*, abogada de la parte recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

La controversia que hoy se nos plantea es novel. Nos toca resolver, a tenor con las normas aplicables de nuestro derecho civil, cuáles son los efectos del descargo (*discharge*) de una deuda, concedido a uno de los cónyuges (*debtor spouse*) y a la sociedad de bienes gananciales tras un procedimiento en la Corte de Quiebras, cuando ambos cónyuges habían suscrito dicha deuda solidariamente y la sociedad de bienes gananciales quedó disuelta mediante divorcio durante la tramitación del caso instado por el acreedor (*community creditor*) contra el otro cónyuge (*nondebtor spouse*) y la sociedad de bienes gananciales.

I

El 15 de mayo de 1987 el Sr. Alfonso Anaya Portuondo y su entonces esposa la Sra. Ana Margarita Del Río Corrada otorgaron la Escritura Pública Núm. 6 ante el notario Calixto Ruiz-Sierra Fernández, mediante la cual adquirieron un inmueble situado en la Urbanización Summit Hills Tureyquen del Barrio Monacillos de Río Piedras, perteneciente al Sr. Horacio Hugo Campolieto Bielicki. Surge de la referida escritura que los compradores adquirieron el inmueble por el precio total de ciento cincuenta y cinco mil dólares ($155,000), de los cuales entregaron al vendedor la cantidad de ciento siete mil cincuenta y ocho dólares con trece centavos ($107,058.13) y retuvieron la suma de treinta y dos mil novecientos cuarenta y un dólares con ochenta y siete centavos ($32,941.87) para cancelar una primera hipoteca que gravaba el inmueble. El remanente de la suma total de compraventa, quince mil dólares ($15,000), los compradores se comprometieron a pagarlo en tres (3) años sucesivos, al diez por ciento (10%) de interés anual, a pagar mensualmente. Para garantizar dicha deuda, los compradores constituyeron una hipoteca sobre el inmueble adquirido y suscribieron un pagaré hipotecario al portador en la misma fecha y ante el mismo notario.

Tanto en la escritura de constitución de hipoteca como

en el pagaré se hizo constar que los compradores comparecían "como deudores hipotecarios solidarios".

El 24 de agosto de 1989 el señor Anaya Portuondo presentó ante la Corte de Quiebras una solicitud para acogerse al procedimiento voluntario de quiebra. *In re Alfonso Anaya Portuondo*, Caso Núm. 89-03743(SEK). Pretendía evitar la presentación o continuación de demandas en su contra, en virtud de la paralización automática que provee este proceso judicial. Anaya Portuondo incluyó en su solicitud de quiebra dos (2) deudas hipotecarias de la sociedad legal de gananciales compuesta por él y su esposa Ana Margarita Del Río Corrada. Estas fueron enumeradas en la lista del *Creditors Holding Security*, en la cual se incluyó el pagaré hipotecario por quince mil dólares ($15,000) a favor del Sr. Horacio Campolieto Bielicki. Posteriormente, el 27 de abril de 1990, la Corte de Quiebras para el Distrito de Puerto Rico emitió el relevo (*discharge*) de las deudas incurridas por la sociedad de gananciales Anaya-Del Río. Este relevo le aplicaba en particular al señor Anaya Portuondo, impidiendo que éste tuviese que responder personalmente por las deudas allí incluidas. La orden emitida a esos efectos incluyó la advertencia siguiente: "[a]ll creditors are prohibited from attempting to collect any [debts] that [have] been discharged in this case."

El 22 de mayo de 1990 el Sr. Horacio Hugo Campolieto Bielicki, su esposa Dinorah Parras Silvestry y la sociedad legal de gananciales compuesta por ambos, presentaron una demanda sobre cobro de dinero y la ejecución de hipoteca por la vía ordinaria contra el señor Anaya Portuondo, su esposa, la señora Del Río Corrada, y la sociedad legal de gananciales constituida por ellos. Los demandantes alegaron que los demandados habían suscrito un pagaré hipotecario por sí y como representantes de la sociedad legal de gananciales compuesta por ellos y que cada uno de los cónyuges y la sociedad de bienes gananciales eran deudores solidarios. Alegaron, además, que desde el 15 de mayo de 1990 los demandados le adeudaban un balance de diez mil dólares ($10,000) de la deuda, más ochocientos treinta y

tres dólares con treinta centavos ($833.30) en concepto de intereses vencidos. Señalaron también los demandantes que, según su información y creencia, los demandados estaban divorciados al momento de interponerse la demanda.

El 11 de junio de 1990 el codemandado Anaya Portuondo presentó una moción titulada Notificación de Radicación de Quiebra y Paralización de Procedimientos, en la cual le informó al tribunal de instancia en cuanto al impedimento legal que recaía sobre Campolieto para demandarlo personalmente bajo la premisa de incumplimiento de pago de dicha obligación, ya que la Corte de Quiebras le había relevado de responsabilidad sobre ésta. Señaló que la orden de la Corte de Quiebras era final y firme, por lo que éste no respondía personalmente frente a Campolieto. Añadió también que durante los procedimientos en la Corte de Quiebras tuvo que entregar todo su caudal al Síndico, Sr. Ray Cohen. Finalmente, indicó que el demandante podría recobrar su acreencia si comenzaba un procedimiento de ejecución de hipoteca sobre la propiedad que el Sr. Ray Cohen tenía bajo su poder.

La señora Del Río Corrada sometió una declaración jurada, suscrita el 24 de julio de 1990, en la cual afirmó que permanecía casada con el codemandado Alfonso Anaya Portuondo. En su solicitud de revisión presentada ante este Tribunal el 19 de enero de 1993 expresó que "el 26 de abril de 1991 se disolvió la Sociedad Legal de Gananciales mediante sentencia emitida por el Tribunal Superior, Sala de Bayamón".

El 14 de junio de 1990 la codemandada Ana Margarita Del Río Corrada compareció por sí y en representación de la sociedad legal de gananciales y expresó que la reclamación versaba sobre una alegada deuda en torno a la cual se había obtenido un relevo por la Corte de Quiebras y por esta razón solicitaba una prórroga para contestar la demanda.

El 16 de julio de 1990 la señora Del Río Corrada presentó una moción mediante la cual se allanó a la ejecución de la hipoteca y venta en subasta pública de la propiedad

hipotecada y solicitó, además, que se dictase sentencia sumaria y se desestimase la reclamación respecto a los demás bienes de la codemandada, incluyendo los gananciales. La parte demandante aceptó que se dictase sentencia sumaria respecto a la venta en subasta pública de la propiedad, pero se opuso a lo demás. Continuaron los procedimientos, y el 5 de diciembre de 1990 las partes sometieron un acuerdo de transacción parcial en el cual acordaron la venta de la propiedad en subasta pública y que de no ser satisfecha la deuda reclamada con la garantía real de hipoteca, las partes aceptaban que el tribunal resolviera la cuestión sometida mediante sentencia parcial. El 11 de diciembre de 1990 el tribunal emitió una sentencia parcial, aprobó la estipulación y autorizó la venta de la propiedad en subasta pública.

Se realizaron todos los procedimientos relacionados con la venta en subasta pública, pero ésta se declaró desierta en tres (3) ocasiones. El tribunal determinó entonces que el valor de la propiedad sería seis mil seiscientos sesenta y seis dólares con setenta y un centavos ($6,666.71), cantidad que podría ser adjudicada a favor del demandante si éste optaba por dicha compensación. Sin embargo, el 12 de junio de 1991 el señor Campolieto solicitó que el tribunal emitiese una determinación sobre la moción de sentencia sumaria presentada en relación con la demanda de cobro de dinero contra Del Río Corrada y la sociedad de gananciales compuesta por ella y Anaya Portuondo. Éste indicó que "la subasta de la propiedad hipotecada, no produjo adjudicación de la buena pro. Ningún licitador compareció a los actos convocados, porque el pago de la primera hipoteca no ofrece 'equity' disponible".

Finalmente, el 17 de diciembre de 1992 el tribunal de instancia dictó sentencia sumaria final y condenó a la codemandada Ana Margarita Del Río Corrada "por sí y a la sociedad legal de gananciales que representa, al pago total de la suma de diez mil ochocientos treinta y tres dólares con treinta y tres centavos".

Inconforme con dicha sentencia, la señora Del Río Corrada interpuso recurso de revisión y plantea la cuestión siguiente:

Erró el Honorable Tribunal al imponerle a la compareciente la obligación de satisfacer la totalidad de una deuda ganancial declarada y descargada en un procedimiento de quiebra iniciado y concluido durante la vigencia de la sociedad legal de gananciales todo ello en violación al efecto interdictal de la Sección 524(a)(3) del Código de Quiebra, 11 U.S.C.

Decidimos revisar y expedimos el recurso.

La cuestión planteada requiere que analicemos varios aspectos del asunto ante nuestra consideración. Por un lado, debemos determinar si el procedimiento de quiebra iniciado por el codemandado Anaya Portuondo (*debtor spouse*) y la subsiguiente orden de descargo (*discharge*) que obtuvo protegen los bienes de la sociedad de bienes gananciales (*community property*) de los codemandados Anaya Portuondo (*debtor spouse*) y Del Río Corrada (*nondebtor spouse*), que fueron sometidos al procedimiento de quiebra (*bankcruptcy estate*), y los bienes futuros de dicha sociedad de bienes gananciales (*future community property*). Además, debemos determinar si: (1) una vez concluido el procedimiento de quiebra y disuelto el matrimonio por divorcio quedan protegidos por la orden de descargo (*discharge*) tanto los bienes de la comunidad surgida de dicha sociedad de gananciales al ésta disolverse como los futuros bienes de esa comunidad; (2) una vez disuelta la comunidad de bienes, al hacerse la liquidación de los bienes gananciales, qué bienes quedan protegidos por la orden de descargo (*discharge*); (3) una vez disuelta y liquidada la sociedad de bienes gananciales puede el acreedor (*community creditor*) cobrarle a la codemandada Del Río Corrada (*nondebtor spouse*), como codeudora solidaria, la totalidad o una parte de la deuda, y (4) de poder cobrar todo o parte de la deuda a la codemandada Del Río Corrada (*nondebtor spouse*), cuáles de los bienes privativos de ella están protegidos por la orden de descargo (*discharge*) y contra cuáles puede el

acreedor (*community creditor*) dirigirse en sus gestiones de cobro.([1])

## II

La controversia está regida de una parte por el Código de Quiebras federal (11 U.S.C. sec. 1 *et seq.*) y de otra parte por nuestro derecho civil. Pasemos ahora a examinar los aspectos de la Ley de Quiebras federal.

■ El matrimonio implica gestiones económicas como cualquier otra empresa. El propósito principal de la quiebra es proporcionarle al deudor una nueva oportunidad para relevarle de todas las deudas descargables (*dischargeable debts*). Este propósito no se logra siempre en un sistema de comunidad de bienes (*community property system*) por razón de las diferentes formas en que el Código de Quiebras trata este concepto.([2]) Cuando uno solo de los es-

---

([1]) Por no estar planteado en este caso no discutiremos los efectos que sobre la valoración de los bienes gananciales, para propósitos de la liquidación de la sociedad de bienes gananciales, tiene un procedimiento de quiebra instado por uno solo de los cónyuges, en el que éste obtiene una orden de descargo y ambos cónyuges se habían constituido como deudores solidarios con relación a una deuda ganancial que fue descargada con respecto a uno de ellos y a la sociedad de bienes gananciales, que posteriormente quedó disuelta por divorcio.

([2]) Al respecto se expresa la Profesora Joan Henderson en *For Better or for Worse: Liability of Community Property after Bankruptcy*, 29 Idaho L. Rev. 893, 895, esc. 4 (1992–1993): " 'Community discharge' is not literally an accurate term since no discharge is granted but rather an injunction protects the community property from the discharged community claims. *Gonzales* v. *Costanza (In re Costanza)*, [151 B.R. 588 (Bkrtcy. D.N.M. 1993)].

"11   U.S.C. 87 524(a)(3), (b)(1988) read as follows:
"Effect of Discharge
"(a) A discharge in a case under this title-

.  .  .  .  .  .

"(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(c)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

posos interpone la solicitud de quiebra([3]) —como sucedió en el caso de autos— la sección 524(a)(3), *supra*, dispone que el descargo (*discharge*) del cónyuge deudor (*debtor spouse*) opera como un *injunction* que protege la comunidad de bienes, presentes y futuros, que forman parte del caudal de quiebra (*bankruptcy estate*), incluyendo la participación del cónyuge no deudor (*nondebtor spouse*) en éstos.([4])

Usualmente la quiebra atañe sólo a los acreedores del deudor que la ha solicitado. Pero cuando está implicada una comunidad (*community property*), una solicitud de quiebra puede estar basada en la responsabilidad de la comunidad, así como en la responsabilidad personal de quien la solicite. En consecuencia, cuando sólo uno de los cónyuges interpone la solicitud de quiebra, las obligaciones de la comunidad (*community claims*) a la que pertenece el cónyuge no deudor, son obligaciones de la quiebra.([5]) Una obligación de la comunidad existe siempre

---

"(b)  Subsection (a)(3) of this section does not apply if-

"(1)(A)  the debtor's spouse is a debtor in a case under this title, or a bankrupt or a debtor in a case under the Bankruptcy Act, commenced within six years of the date of the filing of the petition in the case concerning the debtor, and

"(B)  the court does not grant the debtor's spouse a discharge in such case concerning the debtor's spouse; or

"(2)(A)  the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this title concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; and

"(B)  a determination that the court would not so grant such discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this title of whether a debtor is granted a discharge."

([3]) Para mayor protección de ambos cónyuges, lo aconsejable en la mayor parte de los casos es que la petición de quiebra la hagan conjuntamente ambos cónyuges.

([4]) A los efectos, señala la Profesora Henderson, *supra*, pág. 898, esc. 23, que: "11 U.S.C. sec. 524(a)(3) (1988) protects future property of the kind brought into the estate under sec. 541(a)(2) and that section deals with the entire community property, not merely one-half. *In re Sweitzer*, 111 B.R. 792, 800 (Bkrtcy. W.D. Wis. 1990) (community discharge is for all community property, even if state law would protect only one-half); *In re Karber*, 25 B.R. 9, 12 (Bkrtcy. N.D. Tex. 1982) (discharge bars access to future community property of either husband or wife); Patrick A. Murphy, *Creditor's Rights in Bankruptcy*, sec. 18.16 (2d ed. 1992)."

([5]) El código define el término *community claim* de la forma siguiente: "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not

que un acreedor pueda alcanzar una porción de la propiedad de la comunidad, independientemente de las leyes estatales existentes sobre la responsabilidad de los esposos.([6]) Un cónyuge no puede interponer una solicitud separada de quiebra con sus deudas privativas para proteger sólo su propiedad privativa.([7])

■ El cónyuge que se acoge al beneficio de la quiebra (*debtor spouse*) recibe una protección completa a través del "descargo" (*discharge*) personal y de la comunidad. Sin embargo, el cónyuge que no se acogió al beneficio de la quiebra (*nondebtor spouse*) recibe sólo una protección *in rem* a través del "descargo" de la comunidad. Puesto que dicho cónyuge no está protegido personalmente, la protección depende de la naturaleza de sus bienes. Usualmente sus bienes privativos responden por las deudas por las que es responsable personalmente.([8])

■ Sobre la protección que la quiebra ofrece a los bienes que con anterioridad a la disolución de un matrimonio por divorcio pertenecían a la sociedad de bienes gananciales, la Profesora Henderson expresa lo siguiente:

> Nevertheless, it seems this former community property ought to retain any protection it had while it was future community property. The change in status to separate property upon divorce should not revoke the community discharge protection because it would be unfair to suddenly give a windfall to the banckruptcy creditor. After all, the nondebtor obligated spouse submitted his share of community property to the estate. The community earned the discharge. The motivation to work hard and accumulate assets after discharge would be frustrated if retroactive elimination of community discharge protection was possible.([9])

---

there is any such property at the time of the commencement of the case." 11 U.S.C. sec. 101(7).

([6]) Henderson, *supra*, pág. 899; *In re Lang*, 191 B.R. 268 (D. P.R.1995).

([7]) 4 *Collier on Bankruptcy* Sec. 541.15, 15[8] (15ta ed. rev. 1992).

([8]) "Section 524(a)(3) of the Code does not give a personal discharge to the nondebtor spouse." Henderson, *supra*, pág. 902 esc. 54.

([9]) Henderson, *supra*, pág. 923.

Además de lo antes expuesto, con respecto a los otros bienes privativos del cónyuge que no se sometió al procedimiento de quiebra (*nondebtor spouse*), éstos responden a sus acreedores en la medida en que la ley local así lo permita.

## III

■ Al aplicar los principios reseñados a las circunstancias particulares del caso de autos, es forzoso concluir que la solicitud de quiebra del codemandado Anaya Portuondo tuvo el efecto de incluir en el caudal en quiebra (*bankruptcy estate*) todos sus intereses y los de su esposa en la sociedad de bienes gananciales (*community property*). 11 U.S.C. sec. 541. El tribunal de instancia señaló correctamente que "[u]n esposo(a) no puede radicar una acción y aislar los bienes de la comunidad, para evitar que se conviertan en propiedad del caudal. La petición, por uno de los esposos, pasa todos los bienes de la comunidad al caudal [en quiebra (*bankruptcy estate*)] en los estados donde los esposos administran en común o por igual y controlan todos los bienes de la comunidad. Por tal razón, se incluyó la casa y el solar de la parte demandada en el caudal [en quiebra (*bankruptcy estate*)], junto con las dos hipotecas que la gravan". Erró, sin embargo, el foro de instancia al condenar a la sociedad de bienes gananciales, representada por la recurrente, al pago de la deuda.

Pasemos ahora a examinar qué efecto tiene un divorcio en casos como el de autos.

■ Si los cónyuges se divorcian durante la vigencia de la quiebra, los bienes que pertenecieron a la sociedad legal de gananciales permanecen en el caudal en quiebra (*bankruptcy estate*) hasta tanto dichos bienes sean divididos.([10]) Es más, el tribunal ante el cual se efectuó el

---

([10]) *In re McCoy*, 111 B.R. 276, 279 (9no Cir. 1990); *In re Willard*, 15 B.R. 898, 900 (9no Cir. 1981).

divorcio no puede dividir la comunidad de bienes hasta que haya ocurrido la distribución de la quiebra.[11]

Sobre este particular, la profesora Henderson señala lo siguiente:

> ... The community discharge is designed to prevent the community creditors from getting around the discharge injunction through the back door by pursuing the community property through the nondebtor spouse. After divorce, this protection is no longer relevant. Moreover, *the community discharge literally is only for future community property of the debtor and her spouse.* The nondebtor obligated husband did not submit to bankruptcy and is not personally discharged. His only protection depended on the status of the property, and once the property loses that status by the award to him as his separate property, it becomes liable to his creditors as allowed by state law. (Escolios omitidos y énfasis suplido.)[12]

En este caso es claro que no se podía responsabilizar a la sociedad legal de gananciales, pues ésta ya no existía cuando se dictó sentencia el 27 de diciembre de 1992. Los procedimientos en la Corte de Quiebras finalizaron el 27 de abril de 1990 cuando el tribunal emitió la orden de descargo *(discharge)*. Esta orden protegía los bienes del codemandado Anaya Portuondo *(debtor spouse)* y los de la sociedad de bienes gananciales de éste y la codemandada Del Río Corrada contra cualquier acción de cobro de las deudas sometidas al procedimiento de quiebra. Posteriormente, el 26 de abril de 1991, el matrimonio Anaya-Del Río se disolvió mediante divorcio. En autos no consta que los bienes de la extinta sociedad de bienes gananciales se hayan dividido. Ahora bien, si éstos no se dividieron, como parece ser lo más probable, aún permanecen bajo la protección de la Corte de Quiebras. De otra parte, si se dividieron, la parte que le haya correspondido a la recurrente Del Río Corrada pasó a ser su patrimonio personal y como tal tenemos que analizar en qué medida, si alguna, ella está

---

[11] *In re Willard,* supra, pág. 900. 4 *Collier on Bankruptcy,* supra, sec. 541.15. *In re Teel,* 34 B.R. 762, 764 (9no Cir. 1983).

[12] Henderson, *supra,* págs. 922–923.

sujeta a la responsabilidad personal que emana de una deuda de la extinta sociedad de bienes gananciales.

IV

Habiendo determinado que la protección del Código de Quiebras otorgada al codemandado Anaya Portuondo no libera a la recurrente Del Río Corrada en su carácter personal, debemos resolver si ésta es responsable, como ex miembro de la sociedad de bienes gananciales y codeudora solidaria, de la deuda en controversia. Esta cuestión se rige totalmente por el Código Civil de Puerto Rico.

En cuanto a la responsabilidad de la codemandada Del Río Corrada como ex miembro de la sociedad de bienes gananciales con respecto a los bienes provenientes de dicha sociedad, acogemos, por ser esta la posición más cónsona con el esquema y la filosofía de equidad e igualdad que rige la sociedad de bienes gananciales y su consecuente liquidación, el criterio esbozado por la profesora Henderson, de que la propiedad privativa de la demandada Del Río Corrada que con anterioridad al divorcio formaba parte de la sociedad de bienes gananciales y los bienes futuros que de ésta se deriven deben retener cualquier protección que tenían mientras eran parte de la sociedad de bienes gananciales y propiedad futura de dicha sociedad.

Según apuntara Puig Brutau con relación a la liquidación de la sociedad de bienes gananciales, y haciendo referencia al comentarista Lacruz, "no se trata de la determinación de una ganancia a base de un cálculo de valores, como sucede al final del ejercicio económico de una empresa mercantil, *sino que se sigue un procedimiento para conseguir la igualdad en las adjudicaciones*". (Énfasis suplido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1967, T. IV, Vol. I, pág. 788.

Pasemos ahora a analizar cuál es su responsabilidad como codeudora solidaria.

Las obligaciones solidarias de acuerdo con el Art.

1090 del Código Civil, 31 L.P.R.A. sec. 3101, "son aquellas en que concurriendo varios acreedores, varios deudores o varios acreedores y deudores, cada uno de ellos tiene derecho a pedir y cada uno de éstos debe prestar el contenido íntegro de la obligación".

De esta definición legal se infiere que los caracteres propios de las obligaciones solidarias son los siguientes:

1. Una pluralidad de sujetos que actúe cada uno en función de su propia y distinta pluralidad. Si la pluralidad se presenta en los acreedores, se tratará de una *solidaridad activa*; si surge entre los deudores, estaremos ante una *solidaridad pasiva*. También es posible que la pluralidad se ofrezca tanto entre los deudores como entre los acreedores, surgiendo entonces la *solidaridad mixta*.

2. Unidad de objeto, conforme al aforismo *eadem res, eadem pecunia*. La solidaridad se caracteriza por la unidad jurídica de la prestación. La existencia del débito único explica que los acreedores puedan reclamar la prestación entera a cualquiera de los deudores, y cada uno de los deudores solidarios está obligado a prestarla íntegramente. Cada uno de los deudores solidarios tiene una obligación plena de pago.

La obligación solidaria manifiesta la más absoluta correspondencia entre débito y garantía, en el sentido de que cada deudor y cada acreedor sólo debe aquello a lo que se obliga; pero la garantía se extiende, *externamente*, a la totalidad del débito colectivo. Cada deudor *garantiza* la absoluta prestación, aunque no la *debe* en su totalidad, ya que una vez realizado el pago puede exigir de los demás la parte que a ellos corresponda.

3. Lo anterior explica los efectos de las obligaciones solidarias: la existencia de una relación *interna* entre acreedores y entre deudores, por cuya función cada uno de ellos es, frente a los otros, acreedor y deudor de su parte.[13]

---

[13] F. Puig Peña, *Compendio de Derecho Civil español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. III, pág. 88 *et seq.* Véanse: E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, Oxford, Ed. Equity, 1991, Vol. V, pág. 139 *et seq.*; F. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed. rev., Barce-

■ Por regla general, la presunción de solidaridad no existe. En las obligaciones pluripersonales, se parte del principio de que el concurso de sujetos se lleva a cabo mancomunadamente y con carácter simple, por lo que la solidaridad constituye entonces la excepción. De tal modo es así que el Art. 1090 del Código Civil, *supra*, establece que sólo habrá solidaridad "cuando la obligación expresamente lo determine ...".

Conforme a lo anterior, la solidaridad debe derivarse, ya de una expresa convención de las partes, o del mandato legislativo. Lo anterior no obsta, sin embargo, para que se aprecie en la vida moderna una marcha ascendente hacia la solidaridad, que encontró su punto de apoyo en la esfera mercantil y se extiende con trazo firme a las demás esferas del derecho de obligaciones.[14]

En el caso ante nuestra consideración no existe controversia sobre el carácter solidario de la obligación que contrajeron los codemandados al suscribir el pagaré de referencia.

Nos resta por analizar, si al disolverse la sociedad de bienes gananciales mediante divorcio y quedar el ex esposo, codemandado y codeudor solidario, protegido por virtud de una disposición estatutaria y judicial —la orden de descargo de la Corte de Quiebras que implanta la Ley de Quiebras federal al amparo de la legislación local— el acreedor podía cobrar a la codemandada Del Río Corrada, de sus otros bienes privativos, la totalidad o parte de la deuda. Bajo estas circunstancias, la Ley de Quiebras federal protegía directa e indirectamente a uno solo de los ex miembros de la sociedad de bienes gananciales, aparentando hacer al otro enteramente responsable por una deuda asumida para beneficio de la sociedad de bienes gananciales.

---

lona, Ed. Bosch, 1985, T. I, Vol. III, pág. 148 *et seq.*; J. Santos Briz, *Derecho Civil: Teoría y Práctica*, Madrid, Ed. Rev. Der. Privado, 1975, T. III, pág. 137 *et seq.*

[14] Puig Peña, *op. cit.*, pág. 84. Esta marcha ascendente se observa, no sólo en la orientación que siguen algunas jurisprudencias, como la francesa, sino en algunos códigos como el alemán, suizo y el nuevo Código italiano.

Estamos ante unas circunstancias muy particulares, en las cuales el acreedor al obtener el acuerdo de solidaridad de los cónyuges estaba consciente del particular esquema de equidad en la distribución que rige la relación de los bienes en un matrimonio y que toda obligación asumida por los cónyuges es ganancial. Arts. 1295 y 1308 del Código Civil, 31 L.P.R.A. secs. 3621 y 3661. Nada se dijo ni en la hipoteca ni en el pagaré sobre si uno o ambos cónyuges tenían bienes privativos con qué responder a la obligación. Tampoco se pasó prueba en instancia sobre este particular.[15] Una inmunidad estatutaria, como lo es la dimanante de la Ley de Quiebras federal, no puede tener el efecto detrimental de subvertir el esquema de repartición equitativa de deudas y bienes que es eje central del proceso de liquidación del haber ganancial. Una interpretación integral de todas las disposiciones atinentes a ésta, una de las más importantes y cruciales figuras jurídicas en nuestra organización familiar social, nos lleva a concluir que, bajo las circunstancias específicas de este caso, no puede imponérsele a uno solo de los ex cónyuges el peso total de una responsabilidad que emana de una carga ganancial. No siendo posible que se pueda repetir en la relación interna de deudores solidarios contra el otro deudor solidario, el ex cónyuge, ya que la sociedad de bienes gananciales había quedado disuelta, el acreedor sólo podrá recobrar, de los otros bienes privativos de la codemandada Del Río Corrada, la parte que a ésta le corresponde, o sea, la mitad de la deuda. Al no decirse otra cosa en la obligación, la deuda se presume dividida en tantas partes como deudores hay. Art. 1091 del Código Civil, 31 L.P.R.A. sec. 3102.

Por todo lo antes expuesto, *se dictará sentencia para revocar en parte y modificar en parte la emitida por el foro*

---

[15] Por no estar ante nuestra consideración, nada estamos resolviendo en cuanto a aquellos casos en que en un pagaré o hipoteca se exprese que los cónyuges tienen bienes privativos con los que responder por la obligación o en que se pacte específicamente que estos responderán con sus bienes privativos.

*de instancia. En dicha sentencia se desestimará la reclamación contra la ya extinta sociedad de bienes gananciales Anaya-Del Río, y a tenor de lo aquí resuelto, se condenará a la codemandada Del Río Corrada al pago de la mitad de la cantidad adeudada a la parte demandante que habrá de ser cobrada ésta de los bienes privativos de la codemandada Del Río Corrada que no formaban parte de la sociedad de bienes gananciales ya extinta ni de los bienes futuros que de ésta se deriven y se devolverá el caso al foro de instancia para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Negrón García disintió sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Corrada Del Río se inhibió.