SENTENCIA
El presente recurso de certiorari fue presentado ante este Tribunal el 5 de junio de 2013. En éste se solicitó la revisión de una sentencia enmendada del Tribunal de Apelaciones, dictada el 12 de abril de 2013, mediante la cual se ordenó la continuación de un procedimiento de ejecución de sentencia únicamente en contra de los bienes privativos del Sr. Víctor Roberto Fernández Ramos, cónyuge de la Sra. Teresa Guillén Lugo. Esta última había presentado una solicitud de quiebra ante el foro federal y, posteriormente, solicitó ante el Tribunal de Primera Instancia la *193 paralización de los procedimientos al amparo de lo dispuesto en el Código de Quiebras federal, 11 USCA see. 362(a) (Sección 362(a)). La deuda que se intentaba cobrar mediante el procedimiento de ejecución de sentencia formaba parte del caudal de quiebra, puesto que era una deuda de la Sociedad Legal de Gananciales compuesta por el señor Fernández Ramos y la señora Guillén Lugo. El 25 de octubre de 2013 expedimos el recurso presentado.
Evaluado el expediente y el Derecho aplicable, se revoca el dictamen del Tribunal de Apelaciones y se ordena la paralización de todos los procedimientos hasta tanto culmine el procedimiento de quiebra instado por la señora Guillén Lugo en el foro federal o se obtenga un remedio de relevo de la paralización por parte de ese foro.
Así lo pronunció el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una Opinión de conformidad, a la que se unieron la Jueza Presidenta Señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez. El Juez Asociado Señor Feliberti Cintrón emitió una Opinión disidente.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la que se unen la Jueza Presidenta Señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez.
El presente recurso requiere evaluar el efecto de una paralización automática de un procedimiento judicial, conforme a las disposiciones del Código de Quiebras federal, sobre el patrimonio privativo de un cónyuge que no se sometió al procedimiento de quiebra. Específicamente, corresponde determinar si la paralización de un proceso ju *194 dicial de cobro de dinero en contra de dos cónyuges y la Sociedad Legal de Gananciales compuesta por ambos debe surtir efectos únicamente en cuanto al cónyuge que se acogió al procedimiento de quiebra y la Sociedad o si, por el contrario, paraliza también los procedimientos en cuanto al otro cónyuge.
Por lo tanto, procede evaluar si el Tribunal de Apelaciones actuó correctamente al ordenar la continuación de los procedimientos contra los bienes privativos del cónyuge que no se acogió al proceso de quiebra. Esto a pesar de que los bienes y las deudas de la sociedad legal de gananciales fueron incluidos válidamente en la solicitud de quiebra presentada por su cónyuge. Por los fundamentos que es-bozo a continuación, considero que el foro apelativo intermedio erró al exceptuar de la paralización automática los bienes privativos del cónyuge que no presentó una petición de quiebra ante el foro federal. Por lo tanto, estoy conforme con la sentencia que hoy emite este Tribunal. Preciso, sin embargo, hacer unas expresiones adicionales con relación a la controversia planteada, pues estimo que su resolución ameritaba una Opinión por parte de este Foro. Esto en atención a la crisis económica que arropa la Isla y la alta probabilidad de que este Tribunal tenga que atender una controversia análoga en el futuro.
I
Los hechos que subyacen la controversia que nos ocupa se enmarcan en una sentencia dictada por el Tribunal de Primera Instancia el 16 de agosto de 2010. Mediante ésta, el foro primario decretó la nulidad de un contrato de compraventa suscrito por la Sra. Teresa Guillén Lugo y el Sr. Víctor Fernández Ramos, y la Sociedad Legal de Gananciales compuesta por ambos, con el Sr. Héctor Báez Rivera y la Sra. Nancy Casanova Vázquez. Además, el foro primario *195 ordenó a la señora Guillén Lugo, al señor Fernández Ramos y a la Sociedad Legal de Gananciales el pago de determinada suma de dinero en concepto de los daños y perjuicios sufridos por el señor Báez Rivera y la señora Casanova Vázquez.
El 13 de julio de 2012, la señora Guillén Lugo presentó una petición ante el foro federal para acogerse a la protección que ofrece el Capítulo 13 del Código de Quiebras federal. Subsiguientemente, presentó el correspondiente Aviso de Presentación de Petición de Quiebra (.Notice of Bankruptcy Case Filing), ante el Tribunal de Primera Instancia. Posteriormente, el foro primario emitió una Resolución mediante la cual ordenó la paralización de los procedimientos de ejecución de sentencia, en atención a la presentación de la petición de quiebra por parte de la señora Guillén Lugo. Tras una solicitud de reconsideración por parte del señor Báez Rivera y de la señora Casanova Vázquez, el foro primario enmendó su Resolución. Dispuso que la paralización únicamente procedía en cuanto a los procedimientos en contra de la señora Guillén Lugo, mas no así en cuanto al señor Fernández Ramos y la Sociedad Legal de Gananciales compuesta por éste y su cónyuge.
Inconforme, el señor Fernández Ramos acudió al Tribunal de Apelaciones, foro que inicialmente revocó la Resolución enmendada y ordenó la paralización de la totalidad de los procedimientos a nivel de instancia. No obstante, en reconsideración, el foro apelativo intermedio enmendó su dictamen al dejar sin efecto la paralización decretada únicamente en cuanto a los bienes privativos del señor Fernández Ramos. Fundamentó su determinación en que, al tratarse de una sentencia dictada en una acción de daños y perjuicios por incumplimiento contractual, el señor Fernández Ramos era un deudor solidario, por lo que respondía por la totalidad del monto adeudado con su patrimonio personal. De esta manera, el Tribunal de Apelaciones hizo efectivo el cobro de la sentencia dictada por el foro prima *196 rio en contra de los bienes privativos del señor Fernández Ramos.
Insatisfecho, el señor Fernández Ramos acude ante este Tribunal para solicitar que revoquemos el dictamen emitido por el Tribunal de Apelaciones y decretemos la paralización de los procedimientos de cobro de dinero en contra de sus bienes privativos. En síntesis, alega que el foro apelativo intermedio incidió al categorizar la deuda como de carácter solidario sin considerar la naturaleza del pleito y la normativa legal que rige la figura de la sociedad legal de gananciales en nuestro ordenamiento.
II
A
En repetidas ocasiones hemos tenido la oportunidad de expresarnos con relación a la naturaleza jurídica de la Sociedad Legal de Gananciales. En lo que atañe a la controversia que hoy nos ocupa, es preciso repasar brevemente los preceptos que rigen el patrimonio de este tipo de sociedad conyugal.
La Sociedad Legal de Gananciales, conforme a las disposiciones de los Artículos 1295 al 1326 del Código Civil, constituye un régimen patrimonial mediante el cual los cónyuges figuran como condueños y coadministradores de la totalidad de los bienes del patrimonio matrimonial. Así, ambos poseen la titularidad conjunta de este patrimonio sin distinción de cuotas. Montalván v. Rodríguez, 161 DPR 411, 420 (2004). Hemos reconocido que este tipo de sociedad, a pesar de estar supletoriamente regida por las reglas del contrato de sociedad, constituye una entidad económica familiar sui generis, principalmente por los propósitos particulares que persigue. Reyes v. Cantera Ramos, Inc., 139 DPR 925, 928 (1996); Int’l Charter Mortgage Corp. v. Registrador, 110 DPR 862, 865—866 (1981). Además, la misma se distingue de las sociedades ordinarias en lo que *197 respecta a su personalidad jurídica y razón de ser. Véase Reyes v. Cantera Ramos, Inc., supra, págs. 928-929. De esta manera, hemos afirmado que la Sociedad Legal de Gananciales es una entidad separada y distinta de los cónyuges que la componen y que tiene personalidad jurídica propia. Véase Int’l Charter Mortgage Corp., supra.
Esta personalidad jurídica propia de la Sociedad Legal de Gananciales implica que, al tratarse de una personalidad distinta a la de los cónyuges que la componen, el patrimonio, las responsabilidades y los derechos de éstos no se confunden con aquellos que son parte del patrimonio de la sociedad. Véase M. Fraticelli Torres, Un nuevo acercamiento a los regímenes económicos en el matrimonio: la sociedad legal de gananciales en el Derecho puertorriqueño, 29 Rev. Jur. UIA 413, 443 (1995). Por lo tanto, los bienes que componen el patrimonio matrimonial pertenecen a ambos cónyuges “en mano común”, lo que significa que ambos cónyuges son dueños indistintamente del patrimonio matrimonial. No obstante, el derecho propietario sobre una porción particular de los bienes solamente se puede hacer efectivo al momento de la disolución y liquidación de la sociedad pues, ante la ausencia de una determinación de cuotas, el patrimonio de la sociedad conserva su carácter unitario durante la vigencia del matrimonio. íd. De esta manera, se mantiene la personalidad jurídica propia de la entidad económica familiar, mientras se garantiza que ésta no absorba las respectivas personalidades de los cónyuges que la integran. Véase Int’l Charter Mortgage Corp., supra, pág. 867.
En atención a la personalidad jurídica propia de la Sociedad Legal de Gananciales, el Artículo 1308 del Código Civil provee una enumeración de las cargas y obligaciones que, durante la vigencia del matrimonio, le corresponden a ésta. Entre ellas, figuran “[t]odas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges”. 31 LPRAsec. 3661. Esto es, nuestro Código Civil *198 reconoce que los beneficios de este régimen conyugal no se limitan a las ganancias pecuniarias que puedan generar los cónyuges mediante su trabajo o industria durante el matrimonio, sino que también se extienden a “la seguridad que proporciona la dilución en un patrimonio colectivo de la carga de las obligaciones legales que incumben a cada cónyuge [...]”. J.L. Lacruz Berdejo, En torno a la naturaleza jurídica de la comunidad de gananciales del Código Civil, Madrid, Instituto Editorial Reus, 1950, págs. 16-17. Es decir, los cónyuges asumen conjuntamente los riesgos de la empresa común que supone el matrimonio, poniendo a la disposición de la Sociedad Legal de Gananciales, como entidad jurídica con personalidad propia, su porvenir económico mientras ésta, a su vez, provee los medios para mantener y desarrollar el bienestar colectivo del consorcio conyugal.
La atribución de personalidad jurídica propia a la Sociedad Legal de Gananciales persigue un propósito dual. Por un lado, pretende proteger los respectivos patrimonios particulares de cada cónyuge; mientras que, por otro, constituye una fuente subsidiaria para los acreedores de los cónyuges en cuanto a aquellas deudas privativas contraídas antes del matrimonio o las multas o condenas impuestas a uno de ellos durante la vigencia de éste. Véase Art. 1310 del Código Civil de Puerto Rico, 31 LPRA see. 3663. Es decir, la Sociedad Legal de Gananciales responderá subsidiariamente, y previa excusión de bienes, por aquellas deudas de carácter privativo en las que incurran los cónyuges. Por tal razón, el Artículo 1310 del Código Civil dispone que, una vez se liquide la Sociedad Legal de Gananciales, el cónyuge que no contrajo la deuda, o a quien no se le impuso la multa o condena, tendrá un crédito a su favor. Id. En cuanto a esto, hemos resuelto que, en casos de responsabilidad civil, la atribución de responsabilidad se hará conforme a los hechos que motiven la condena. Lugo Montalvo v. González Mañón, 104 DPR 372, 378 (1975).
*199 En nuestras determinaciones previas hemos sido enfáticos en descartar supuestos de solidaridad entre la Sociedad Legal de Gananciales y los cónyuges que la integran en casos que versan sobre responsabilidad civil extracontractual. Al evaluar el régimen de gananciales prevaleciente en nuestro ordenamiento, hemos reconocido como axioma básico de éste el patrimonio individual de cada cónyuge separado del de la Sociedad. García v. Montero Saldaña, 107 DPR 319, 335 (1978). Además, hemos determinado que esta disgregación de patrimonios impide que se aplique una norma de solidaridad entre los cónyuges y la sociedad. Véase Pauneto v. Núñez, 115 DPR 591 597 (1984) (“[La presunción de ganancialidad] no significa ni es equivalente a decir que los cónyuges, como individuos, son responsables solidariamente de todas las deudas de la sociedad. Y viceversa, de existir la responsabilidad de la sociedad, sería subsidiaria, previa excusión de bienes”). Consiguientemente, en lo que respecta a la responsabilidad de los cónyuges y de la Sociedad, rige una norma de subsidiariedad recíproca que excluye la solidaridad.
B
En el caso que nos ocupa, de los hechos reseñados se desprende que el señor Fernández Ramos y la señora Guillén Lugo, como coadministradores de la Sociedad Legal de Gananciales compuesta por ambos, suscribieron un contrato de compraventa en el que, según sus representaciones y la comparecencia y firma de ambos en el contrato, actuaron en beneficio de la Sociedad. Decretada la nulidad de ese contrato, el Tribunal de Primera Instancia condenó a éstos y a la Sociedad Legal de Gananciales al pago de una cuantía en concepto de daños y perjuicios.(1) Conside *200 rando que ambos consortes actuaron en beneficio de la Sociedad y en representación de ésta al momento de suscribir el contrato que motivó la imposición de responsabilidad civil, es forzoso concluir que la condena impuesta representa una carga de la Sociedad Legal de Gananciales y no de cada uno de los cónyuges en su carácter personal.
Por consiguiente, erró el foro apelativo intermedio al caracterizar como deudor solidario al señor Fernández Ramos, obviando la naturaleza jurídica de la Sociedad Legal de Gananciales y su responsabilidad, como entidad jurídica separada de los cónyuges que la componen, ante terceros. En atención a la responsabilidad subsidiaria de los cónyuges por deudas y obligaciones de la Sociedad, antes de permitir que un acreedor se dirigiese contra el patrimonio personal de uno de los cónyuges, procedía auscultar si la Sociedad Legal de Gananciales contaba con suficientes recursos económicos para satisfacer la deuda antes de ordenar al señor Fernández Ramos que satisficiera la deuda con sus bienes privativos.
Es importante señalar que, en este caso, no es posible hacer una excusión de bienes, pues el caudal de la Sociedad Legal de Gananciales se encuentra sujeto a un procedimiento de quiebra. Por tal razón, es improcedente ordenar el pago de una deuda de la Sociedad con cargo a los bienes privativos de uno de los cónyuges. Así, permitir que el señor Fernández Ramos pague la deuda con sus bienes privativos conllevaría desvirtuar la naturaleza jurídica de la Sociedad Legal de Gananciales en tanto y cuando ésta *201 posee personalidad jurídica propia. Además, en la eventualidad de una posible disolución de la Sociedad Legal de Gananciales, el pago hecho por el señor Fernández Ramos repercutiría sobre el caudal ganancial.
Por último, tomando en consideración que el caudal de la Sociedad Legal de Gananciales está sujeto a un procedimiento de quiebra a nivel federal, el foro primario está impedido de evaluar si éste cuenta con suficientes bienes como para satisfacer la condena impuesta. Precisamente por esto, el curso de acción adecuado, conforme con las disposiciones del Código de Quiebra federal, era paralizar la totalidad de los procedimientos. Veamos.
III
A
El Capítulo 13 del Código de Quiebras federal es un vehículo mediante el cual un individuo se acoge a un plan presupuestario para sus ingresos futuros en aras de satisfacer sus deudas a los acreedores. Mediante esta protección, el deudor somete a la supervisión de un síndico sus ingresos futuros para su efectiva administración. La sección 362(a) del Código de Quiebras federal establece un mecanismo de paralización automática que se activa con una petición de quiebra. Véase 11 USC. Esta paralización impide el inicio o la continuación de procedimientos judiciales en contra de los bienes del caudal del deudor sin la autorización del Tribunal de Quiebras, salvo ciertas excepciones contempladas en la sección 362(b), 11 USC. La paralización comprende cualquier procedimiento judicial, administrativo o de otra índole que se haya presentado o se haya podido presentar antes del comienzo de la petición de quiebra. También comprende la ejecución de una sentencia contra el deudor o contra la propiedad de éste decretada antes de la petición. íd. Véase Instituto de Estudios Judiciales, Oficina de Administración de los Tribunales, La pa *202 ralización automática de la Ley de Quiebras 9-10 (1998). En esencia, la consecuencia principal de una paralización automática es que el tribunal en el que se dilucida una reclamación contra el deudor que se somete al procedimiento de quiebra perderá jurisdicción sobre la causa de acción.
Por su parte, la sección 541 del Código de Quiebras federal enumera la propiedad que forma parte del caudal sometido al procedimiento de quiebras. En lo que atañe al caso que nos ocupa, la referida sección indica que todos los intereses del deudor y de su consorte en propiedad de una comunidad forman parte del caudal de quiebra. Por lo tanto, cuando solamente uno de los integrantes de una Sociedad Legal de Gananciales interpone una petición de quiebras, las obligaciones de la sociedad y los reclamos contra ésta pasan a ser parte del caudal. Específicamente, el Código de Quiebras federal, en lo que respecta a la propiedad que es parte del caudal, dispone que:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
(2) All interests of the debtor and the debtor’s spouse in community property as of the commencement of the case that is—
(A) under the sole, equal, or joint management and control of the debtor [...] (Énfasis suplido). 11 USC sec. 541(a).
A esos efectos, la Corte de Quiebras para el Distrito de Puerto Rico ha sido consistente al momento de catalogar los bienes pertenecientes a la sociedad legal de gananciales como parte del caudal de quiebra. En In re Lang, 191 B.R. 268, 272 (Bkrtcy. P.R. 1995), se estableció que “the inevitable conclusion is that where one spouse files bankruptcy in Puerto Rico, all that debtor’s property as well as the community property becomes property of the estate by opera *203 tion of § 541(a)(2)(A)”. Véase, además, In re Rosa, 519 B.R. 575 (2014 WL 4948132), (Bkrtcy. P.R. 2014).
B
En una ocasión anterior tuvimos la oportunidad de examinar la interrelación entre un procedimiento de quiebra a nivel federal y las disposiciones de nuestro Código Civil relacionadas con la Sociedad Legal de Gananciales. Específicamente, nos correspondió, en aquel entonces, expresarnos en torno a las obligaciones de una comunidad postganancial en el contexto de un procedimiento de quiebra. En aquel momento, determinamos que “cuando está implicada una comunidad (community property), una solicitud de quiebra puede estar basada en la responsabilidad de la comunidad, así como en la responsabilidad personal de quien la solicite”. Campolieto v. Anaya, 142 DPR 582, 591 (1998).
En ese caso, sin embargo, concluimos que un acreedor podía dirigirse contra los bienes particulares de un cónyuge una vez disuelta la sociedad legal de gananciales. Esa conclusión, empero, se circunscribió a una situación fáctica en la que la Sociedad Legal de Gananciales había sido disuelta por un divorcio. Además, en Campolieto, la deuda objeto de la reclamación era de carácter solidario por convenio expreso entre las partes que suscribieron un pagaré en el que se hizo constar expresamente que los compradores comparecían como deudores hipotecarios solidarios. Véase Campolieto, supra, pág. 583.(2)
En el presente caso, sin embargo, no nos encontramos ante una deuda u obligación de una comunidad postganan *204 cial, sino ante una obligación de la Sociedad Legal de Gananciales. Esto, puesto que el señor Fernández Ramos y la señora Guillén Lugo continúan casados. Precisamente por ello, la señora Guillén Lugo incluyó la reclamación judicial en cuestión en su petición de quiebra. Véase Solicitud de Quiebra, Apéndice, pág. 129.
IV
Conforme a la interacción entre las disposiciones relativas a la paralización automática de procedimientos judiciales, la propiedad que compone el caudal de un deudor bajo el Código de Quiebras federal y la naturaleza de la sociedad legal de gananciales como una entidad jurídica sui generis en nuestro ordenamiento, es preciso concluir que el foro apelativo intermedio erró al ordenar la continuación de los procedimientos en contra de los bienes privativos del señor Fernández Ramos. Como discutimos, estamos ante una deuda de la sociedad legal de gananciales, cuyos bienes en la actualidad forman parte del caudal de quiebra en el foro federal. Por lo tanto, es improcedente permitir a un acreedor exigir a uno de los miembros de ese consorcio marital que pague la totalidad de la deuda cuando, como señalamos, éste no responde personalmente. Además, el foro apelativo intermedio erró al concluir que se trataba de un supuesto de solidaridad entre los cónyuges contratantes, pues es norma reiterada en nuestro ordenamiento que la solidaridad nunca se presume y se debe consignar expresamente para que surta efectos. Véase 31 LPRA see. 3101.
Debido a que la obligación que nos ocupa le corresponde a la sociedad legal de gananciales, y no a sus integrantes en su carácter personal, estoy conforme con que se decrete la paralización de todos los procedimientos de ejecución de sentencia, incluso aquellos que puedan ser dirigidos en contra de los bienes privativos del señor Fernández Ramos. *205 Esto por entender que, al momento, la deuda que se intenta reclamar forma parte del caudal de quiebra y la paralización automática de cualquier reclamación judicial que pende sobre éste impide que un acreedor pueda indirectamente cobrar su deuda dirigiéndose en contra de los bienes privativos de uno de los integrantes de la sociedad. Como anticipé, es lamentable que una mayoría de los integrantes de este Tribunal estén renuentes a pautar la norma que ha de regir en nuestro ordenamiento en cuanto a un asunto tan espinoso.

 Específicamente, el Tribunal de Primera Instancia concluyó que el contrato otorgado por los demandantes y los esposos Fernández-Guillén resultó nulo por vicio en el consentimiento, pues éstos incurrieron en dolo y debían responder por los daños y perjuicios causados por sus actuaciones. Nótese, sin embargo, que la sentencia del *200 foro primario advino final y firme, y no nos corresponde evaluar si el bien objeto del contrato era privativo o ganancial, pues no es el bien lo que está sujeto al caudal de quiebra sino la deuda que resultó de las actuaciones dolosas de los cónyuges al intentar otorgar un contrato de compraventa para disponer de éste. Es decir, fue en cuanto a esas actuaciones que se dictó sentencia en contra del matrimonio, independientemente del carácter privativo o ganancial del objeto del contrato. Precisamente, es el monto de esa sentencia en contra de la Sociedad Legal de Gananciales la deuda que están intentando recobrar el señor Báez Rivera y la señora Casanova Vázquez, y la que forma parte del caudal sujeto al procedimiento de quiebra.

 Cabe destacar que, en el caso de Campolieto, no estábamos ante una paralización automática sino ante un descargo (“discharge”), el cual constituye una orden que impide la atribución de responsabilidad personal a un deudor que se somete a un procedimiento de quiebra. A diferencia de la paralización automática, el descargo se concreta en una etapa más avanzada en los procedimientos a nivel federal y opera como un interdicto permanente en contra los acreedores que interesen cobrar sus deudas del caudal del quebrado. Véase Instituto de Estudios Jurídicos, Oficina de Administración de los Tribunales, La paralización automática de la Ley de Quiebras, 1998, pág. 6.