EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Héctor Luis Báez Rivera, Nancy Casanova Vázquez y la Sociedad Legal de Gananciales compuesta por ambos Recurridos v. Víctor Fernández Ramos, Víctor José Fernández Ramos, Carmen Aurea Fernández Ramos y Víctor Roberto Fernández Ramos, su esposa Teresa Guillén Lugo y la Sociedad Legal de Gananciales compuesta por ambos Peticionarios | Certiorari 2015 TSPR 74 193 DPR ____ |

Número del Caso:    CC-2013-439


Fecha: 10 de junio de 2015


Tribunal de Apelaciones:

       Región Judicial de Caguas Panel X


Abogado de la Parte Peticionaria:

       Lcdo. Primitivo Pagán Colón


Abogada de la Parte Recurrida:

       Lcda. Ileana Fontanez Fuentes


Materia: Sentencia con Opinión de Conformidad y Opinión Disidente


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Héctor Luis Báez Rivera, Nancy Casanova Vázquez y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Víctor Fernández Ramos, Víctor José Fernández Ramos, Carmen Aurea Fernández Ramos y Víctor Roberto Fernández Ramos, su esposa Teresa Guillén Lugo y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Peticionarios | CC-2013-0439 |

SENTENCIA

San Juan, Puerto Rico, a 10 de junio de 2015

El presente recurso de *certiorari* fue presentado ante este Tribunal el 5 de junio de 2013. En éste, se solicitó la revisión de una sentencia enmendada del Tribunal de Apelaciones, dictada el 12 de abril de 2013, mediante la cual se ordenó la continuación de un procedimiento de ejecución de sentencia únicamente en contra de los bienes privativos del Sr. Víctor Roberto Fernández Ramos, cónyuge de la Sra. Teresa Guillén Lugo. Esta última había presentado una solicitud de quiebra ante el foro federal y, posteriormente, solicitó ante el Tribunal de Primera Instancia la paralización de los procedimientos al amparo de la sección 362 (a) del Código de Quiebras federal,

11 U.S.C.A. sec. 362(a). La deuda que se intentaba cobrar mediante el procedimiento de ejecución de sentencia formaba parte del caudal de quiebra, puesto que era una deuda de la Sociedad Legal de Gananciales compuesta por el señor Fernández Ramos y la señora Guillén Lugo. El 25 de octubre de 2013, expedimos el recurso presentado.

Evaluado el expediente y el Derecho aplicable, se revoca el dictamen del Tribunal de Apelaciones y se ordena la paralización de todos los procedimientos hasta tanto culmine el procedimiento de quiebra instado por la señora Guillén Lugo en el foro federal o se obtenga un remedio de relevo de la paralización por parte de ese foro.

Así lo pronunció el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad a la que se unen la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez. El Juez Asociado señor Feliberti Cintrón emitió una Opinión Disidente.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Héctor Luis Báez Rivera, Nancy Casanova Vázquez y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Víctor Fernández Ramos, Víctor José Fernández Ramos, Carmen Aurea Fernández Ramos y Víctor Roberto Fernández Ramos, su esposa Teresa Guillén Lugo y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Peticionarios | CC-2013-0439 | |

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez

San Juan, Puerto Rico, a 10 de junio de 2015

El presente recurso requiere evaluar el efecto de una paralización automática de un procedimiento judicial, conforme a las disposiciones del Código de Quiebras federal, sobre el patrimonio privativo de un cónyuge que no se sometió al procedimiento de quiebra. Específicamente, corresponde determinar si la paralización de un proceso judicial de cobro de dinero en contra de dos cónyuges y la Sociedad Legal de Gananciales compuesta por ambos debe surtir efectos únicamente en cuanto al cónyuge que se acogió al procedimiento de quiebra y la Sociedad o

si, por el contrario, paraliza también los procedimientos en cuanto al otro cónyuge.

Por tanto, procede evaluar si el Tribunal de Apelaciones actuó correctamente al ordenar la continuación de los procedimientos contra los bienes privativos del cónyuge que no se acogió al proceso de quiebra. Esto, a pesar de que los bienes y las deudas de la sociedad legal de gananciales fueron incluidos válidamente en la solicitud de quiebra presentada por su cónyuge. Por los fundamentos que esbozo a continuación, considero que el foro apelativo intermedio erró al exceptuar de la paralización automática los bienes privativos del cónyuge que no presentó una petición de quiebra ante el foro federal. Por lo tanto, estoy conforme con la sentencia que hoy emite este Tribunal. Preciso, sin embargo, hacer unas expresiones adicionales con relación a la controversia planteada puesto que estimo que su resolución ameritaba una Opinión por parte de este Foro. Esto, en atención a la crisis económica que arropa la Isla y la alta probabilidad de que este Tribunal tenga que atender una controversia análoga en el futuro.

**I**

Los hechos que subyacen la controversia que nos ocupa se enmarcan en una sentencia dictada por el Tribunal de Primera Instancia el 16 de agosto de 2010. Mediante ésta, el foro primario decretó la nulidad de un contrato de compraventa suscrito por la Sra. Teresa Guillén Lugo y el

Sr. Víctor Fernández Ramos, y la sociedad legal de gananciales compuesta por ambos, con el Sr. Héctor Báez Rivera y la Sra. Nancy Casanova Vázquez. Además, el foro primario ordenó a la señora Guillén Lugo, al señor Fernández Ramos y a la Sociedad Legal de Gananciales el pago de determinada suma de dinero en concepto de los daños y perjuicios sufridos por el señor Báez Rivera y la señora Casanova Vázquez.

El 13 de julio de 2012, la señora Guillén Lugo presentó una petición ante el foro federal para acogerse a la protección que ofrece el Capítulo 13 del Código de Quiebras Federal. Subsiguientemente, presentó el correspondiente *Aviso de presentación de petición de quiebra* ("Notice of Bankruptcy Case Filing"), ante el Tribunal de Primera Instancia. Posteriormente, el foro primario emitió una Resolución mediante la cual ordenó la paralización de los procedimientos de ejecución de sentencia, en atención a la radicación de la petición de quiebra por parte de la señora Guillén Lugo. Tras una solicitud de reconsideración por parte del señor Báez Rivera y la señora Casanova Vázquez, el foro primario enmendó su Resolución, disponiendo que la paralización únicamente procedía en cuanto a los procedimientos en contra de la señora Guillén Lugo, mas no así en cuanto al señor Fernández Ramos y la Sociedad Legal de Gananciales compuesta por éste y su cónyuge.

Inconforme, el señor Fernández Ramos acudió al Tribunal de Apelaciones, foro que inicialmente revocó la

Resolución enmendada y ordenó la paralización de la totalidad de los procedimientos a nivel de instancia. No obstante, en reconsideración, el foro apelativo intermedio enmendó su dictamen, dejando sin efecto la paralización decretada únicamente en cuanto a los bienes privativos del señor Fernández Ramos. Fundamentó su determinación en que, al tratarse de una sentencia dictada en una acción de daños y perjuicios por incumplimiento contractual, el señor Fernández Ramos era un deudor solidario, por lo que respondía por la totalidad del monto adeudado con su patrimonio personal. De esta manera, el Tribunal de Apelaciones hizo efectivo el cobro de la sentencia dictada por el foro primario en contra de los bienes privativos del señor Fernández Ramos.

Insatisfecho, el señor Fernández Ramos acude ante este Tribunal solicitando que revoquemos el dictamen emitido por el Tribunal de Apelaciones y decretemos la paralización de los procedimientos de cobro de dinero en contra de sus bienes privativos. En síntesis, alega que el foro apelativo intermedio incidió al categorizar la deuda como una de carácter solidario sin considerar la naturaleza del pleito y la normativa legal que rige la figura de la Sociedad Legal de Gananciales en nuestro ordenamiento.

## II

### A

En repetidas ocasiones hemos tenido la oportunidad de expresarnos en torno a la naturaleza jurídica de la Sociedad Legal de Gananciales. En lo que atañe a la controversia que hoy nos ocupa, es preciso repasar brevemente los preceptos que rigen el patrimonio de este tipo de sociedad conyugal.

La Sociedad Legal de Gananciales, conforme a las disposiciones de los artículos 1295 al 1326 del Código Civil, constituye un régimen patrimonial mediante el cual los cónyuges figuran como condueños y coadministradores de la totalidad de los bienes del patrimonio matrimonial. Así, ambos ostentan la titularidad conjunta de este patrimonio sin distinción de cuotas. *Montalván v. Rodríguez*, 161 D.P.R. 411, 420 (2004). Hemos reconocido que este tipo de sociedad, a pesar de estar supletoriamente regida por las reglas del contrato de sociedad, constituye una entidad económica familiar *sui generis*, principalmente por razón de los propósitos particulares que persigue. *Reyes v. Cantera Ramos, Inc.*, 139 D.P.R. 925, 928 (1996); *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862, 865-866 (1981). Además, la misma se distingue de las sociedades ordinarias en lo que respecta a su personalidad jurídica y razón de ser. Véase *Reyes v. Cantera Ramos, Inc.*, 139 D.P.R. 925, 928-929 (1996). De esta manera, hemos afirmado que la Sociedad

Legal de Gananciales  es una entidad separada y distinta de los cónyuges que la componen y que tiene personalidad jurídica propia. Véase *Int'l Charter Mortgage Corp.*, 110 D.P.R. 862.

Esta personalidad jurídica propia de la Sociedad Legal de Gananciales implica que, al tratarse de una personalidad distinta a la de los cónyuges que la componen, el patrimonio, las responsabilidades y los derechos de éstos no se confunden con aquellos que son parte del patrimonio de la Sociedad. Véase Migdalia Fraticelli Torres, *Un nuevo acercamiento a los regímenes económicos en el matrimonio: la sociedad legal de gananciales en el Derecho puertorriqueño*, 29 Rev. Jur. U.I.A. 413, 443 (1995). Por lo tanto, los bienes que componen el patrimonio matrimonial pertenecen a ambos cónyuges "en mano común", lo que significa que ambos cónyuges son dueños indistintamente del patrimonio matrimonial. No obstante, el derecho propietario sobre una porción particular de los bienes solamente puede hacerse efectivo al momento de la disolución y liquidación de la sociedad pues, ante la ausencia de una determinación de cuotas, el patrimonio de la Sociedad conserva su carácter unitario durante la vigencia del matrimonio. Véase *id.* De esta manera, se mantiene la personalidad jurídica propia de la entidad económica familiar, mientras se garantiza que ésta no absorba las respectivas personalidades de los cónyuges que la integran. Véase *Int'l Charter Mortgage Corp.*, 110 D.P.R. en la pág. 867.

En atención a la personalidad jurídica propia de la Sociedad Legal de Gananciales, el artículo 1308 del Código Civil provee una enumeración de las cargas y obligaciones que, durante la vigencia del matrimonio, le corresponden a ésta. Entre ellas, figuran "[t]odas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges". Cód. Civ. P.R. Art. 1308, 31 L.P.R.A. sec. 3661. Esto es, nuestro Código Civil reconoce que los beneficios de este régimen conyugal no se limitan a las ganancias pecuniarias que puedan generar los cónyuges mediante su trabajo o industria durante el matrimonio sino que también se extienden a "la seguridad que proporciona la dilución en un patrimonio colectivo de la carga de las obligaciones legales que incumben a cada cónyuge . . .". J.L. Lacruz Berdejo, *En torno a la naturaleza jurídica de la comunidad de gananciales del Código Civil* 17 (Instituto Editorial Reus 1950). Es decir, los cónyuges asumen conjuntamente los riesgos de la empresa común que supone el matrimonio, poniendo a la disposición de la Sociedad Legal de Gananciales, como entidad jurídica con personalidad propia, su porvenir económico mientras ésta, a su vez, provee los medios para mantener y desarrollar el bienestar colectivo del consorcio conyugal.

La atribución de personalidad jurídica propia a la Sociedad Legal de Gananciales, persigue un propósito dual. Por un lado, pretende proteger los respectivos patrimonios particulares de cada cónyuge, mientras que, por otro,

constituye una fuente **subsidiaria** para los acreedores de los cónyuges en cuanto a aquellas deudas privativas contraídas antes del matrimonio o las multas o condenas impuestas a uno de ellos durante la vigencia de éste. Véase Cód. Civ. P.R. Art. 1310, 31 L.P.R.A. sec. 3663. Es decir, la Sociedad Legal de Gananciales responderá subsidiariamente, y previa excusión de bienes, por aquellas deudas de carácter privativo en las que incurran los cónyuges. Por tal razón, el artículo 1310 del Código Civil dispone que, una vez se liquide la Sociedad Legal de Gananciales, el cónyuge que no contrajo la deuda, o a quien no se le impuso la multa o condena, tendrá un crédito a su favor. *Id.* En cuanto a esto, hemos resuelto que, en casos de responsabilidad civil, la atribución de responsabilidad se hará conforme a los hechos que motiven la condena. *Lugo Montalvo v. González Mañón*, 104 D.P.R. 372, 378 (1975).

En nuestras determinaciones previas, hemos sido enfáticos en descartar supuestos de solidaridad entre la Sociedad Legal de Gananciales y los cónyuges que la integran en casos que versan sobre responsabilidad civil extracontractual. Al evaluar el régimen de gananciales prevaleciente en nuestro ordenamiento, hemos reconocido como axioma básico de éste, el patrimonio individual de cada cónyuge separado del de la Sociedad. *García v. Montero Saldaña*, 107 D.P.R. 319, 335 (1978). Además, hemos determinado que esta disgregación de patrimonios impide que se aplique una norma de solidaridad entre los cónyuges

y la Sociedad. Véase *Pauneto v. Núñez*, 115 D.P.R. 591, 596-597 (1984). ("[La presunción de gananciabilidad] no significa ni es equivalente a decir que los cónyuges, como individuos, son responsables solidariamente de todas las deudas de la sociedad. Y viceversa, de existir la responsabilidad de la sociedad, sería subsidiaria, previa excusión de bienes."). Consiguientemente, en lo que respecta a la responsabilidad de los cónyuges y de la Sociedad, rige una norma de subsidiariedad recíproca que excluye la solidaridad.

**B**

En el caso que nos ocupa, de los hechos reseñados se desprende que el señor Fernández Ramos y la señora Guillén Lugo, como coadministradores de la Sociedad Legal de Gananciales compuesta por ambos, suscribieron un contrato de compraventa en el que, según sus representaciones y la comparecencia y firma de ambos en el contrato, actuaron en beneficio de la Sociedad. Decretada la nulidad de ese contrato, el Tribunal de Primera Instancia condenó a éstos y a la Sociedad Legal de Gananciales, al pago de una cuantía en concepto de daños y perjuicios.[1] Considerando

---

[1] Específicamente, el Tribunal de Primera Instancia concluyó que el contrato otorgado por los demandantes y los esposos Fernández-Guillén resultó nulo por vicio en el consentimiento, pues éstos incurrieron en dolo y debían responder por los daños y perjuicios causados por sus actuaciones. Nótese, sin embargo, que la sentencia del foro primario advino final y firme y no nos corresponde evaluar si el bien objeto del contrato era uno privativo o ganancial pues no es el bien lo que está sujeto al caudal de quiebra sino la deuda que resultó de las actuaciones dolosas de los cónyuges al intentar otorgar un contrato de

que ambos consortes actuaron en beneficio de la Sociedad y en representación de ésta al momento de suscribir el contrato que motivó la imposición de responsabilidad civil, es forzoso concluir que la condena impuesta representa una carga de la Sociedad Legal de Gananciales y no de cada uno de los cónyuges en su carácter personal.

Por consiguiente, erró el foro apelativo intermedio al caracterizar como deudor solidario al señor Fernández Ramos obviando la naturaleza jurídica de la Sociedad Legal de Gananciales y su responsabilidad, como entidad jurídica separada de los cónyuges que la componen, ante terceros. En atención a la responsabilidad subsidiaria de los cónyuges por deudas y obligaciones de la Sociedad, antes de permitir a un acreedor dirigirse contra el patrimonio personal de uno de los cónyuges, procedía auscultar si la Sociedad Legal de Gananciales contaba con suficientes recursos económicos para satisfacer la deuda antes de ordenarle al señor Fernández Ramos que satisficiera la deuda con sus bienes privativos.

Es importante señalar que, en este caso, no es posible hacer una excusión de bienes, pues el caudal de la Sociedad Legal de Gananciales se encuentra sujeto a un procedimiento de quiebra. Por tal razón, es improcedente

---

compraventa para disponer de éste. Es decir, fue en cuanto a esas actuaciones que se dictó sentencia en contra del matrimonio, independientemente del carácter privativo o ganancial del objeto del contrato. Precisamente, es el monto de esa sentencia en contra de la Sociedad Legal de Gananciales la deuda que se está intentando recobrar por parte del señor Báez Rivera y la señora Casanova Vázquez y la que forma parte del caudal sujeto al procedimiento de quiebra.

ordenar el pago de una deuda de la Sociedad con cargo a los bienes privativos de uno de los cónyuges. Así, permitir que el señor Fernández Ramos pague la deuda con sus bienes privativos conllevaría desvirtuar la naturaleza jurídica de la Sociedad Legal de Gananciales en tanto y cuando ésta posee personalidad jurídica propia. Además, en la eventualidad de una posible disolución de la Sociedad Legal de Gananciales, el pago hecho por el señor Fernández Ramos repercutiría sobre el caudal ganancial.

Por último, tomando en consideración que el caudal de la Sociedad Legal de Gananciales está sujeto a un procedimiento de quiebra a nivel federal, el foro primario está impedido de evaluar si éste cuenta con suficientes bienes como para satisfacer la condena impuesta. Precisamente por esto, el curso de acción adecuado conforme a las disposiciones del Código de Quiebra federal, era paralizar la totalidad de los procedimientos. Veamos.

**III**

**A**

El Capítulo 13 del Código de Quiebras federal es un vehículo mediante el cual un individuo se acoge a un plan presupuestario para sus ingresos futuros en aras de satisfacer sus deudas a los acreedores. Mediante esta protección, el deudor somete a la supervisión de un síndico sus ingresos futuros para su efectiva administración. La sección 362 (a) del Código de Quiebras

federal establece un mecanismo de paralización automática que se activa con una petición de quiebra. Véase 11 U.S.C.A. sec. 362(a). Esta paralización impide el inicio o la continuación de procedimientos judiciales en contra de los bienes del caudal del deudor sin la autorización del Tribunal de Quiebras, salvo ciertas excepciones contempladas en la sección 362 (b), 11 U.S.C.A. sec. 362(b). La paralización comprende cualquier procedimiento judicial, administrativo o de otra índole que se haya presentado o se haya podido presentar antes del comienzo de la petición de quiebra. También comprende la ejecución de una sentencia contra el deudor o contra la propiedad de éste decretada antes de la petición. *Id.* Véase, Instituto de Estudios Judiciales, Oficina de la Administración de los Tribunales*, La paralización automática de la Ley de Quiebras* 9-10 (1998). En esencia, la consecuencia principal de una paralización automática es que el tribunal en el que se dilucida una reclamación contra el deudor que se somete al procedimiento de quiebra perderá jurisdicción sobre la causa de acción.

Por su parte, la sección 541 del Código de Quiebras enumera la propiedad que forma parte del caudal sometido al procedimiento de quiebras. En lo que atañe al caso que nos ocupa, la referida sección indica que todos los intereses del deudor y de su consorte en propiedad de una comunidad forman parte del caudal de quiebra. Por lo tanto, cuando solamente uno de los integrantes de una Sociedad Legal de Gananciales interpone una petición de

quiebras, las obligaciones de la Sociedad y los reclamos contra ésta, pasan a ser parte del caudal. Específicamente, el Código de Quiebras federal, en lo que respecta a la propiedad que es parte del caudal, dispone que:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--
> (A) under the sole, equal, or **joint management and control of the debtor . . .**

11 U.S.C.A. sec. 541(a)(énfasis suplido).

A esos efectos, la Corte de Quiebras para el Distrito de Puerto Rico ha sido consistente al momento de catalogar los bienes pertenecientes a la Sociedad Legal de Gananciales como parte del caudal de quiebra. En *In re Lang*, 191 B.R. 268, 272 (Bkrtcy. P.R.,1995) se estableció que "the inevitable conclusion is that where one spouse files bankruptcy in Puerto Rico, all that debtor's property as well as the community property becomes property of the estate by operation of § 541(a)(2)(A)." Véase además, *In re Rosa*, 2014 WL 4948132, (Bkrtcy. P.R., 2014).

**B**

En una ocasión anterior, tuvimos la oportunidad de examinar la interrelación entre un procedimiento de

quiebra a nivel federal y las disposiciones de nuestro Código Civil relacionadas a la Sociedad Legal de Gananciales. Específicamente, nos correspondió, en aquel entonces, expresarnos en torno a las obligaciones de una comunidad postganancial en el contexto de un procedimiento de quiebra. En aquel momento, determinamos que "cuando está implicada una comunidad ('community property'), una solicitud de quiebra puede estar basada en la responsabilidad de la comunidad, así como en la responsabilidad personal del que la solicita". *Campolieto v. Anaya*, 142 D.P.R. 582, 584 (1997).

En ese caso, sin embargo, concluimos que un acreedor podía dirigirse contra los bienes particulares de un cónyuge una vez disuelta la Sociedad Legal de Gananciales. Esa conclusión, empero, se circunscribió a una situación fáctica en la que la Sociedad Legal de Gananciales había sido disuelta por razón de un divorcio. Además, en *Campolieto*, la deuda objeto de la reclamación era una de carácter solidario por convenio expreso entre las partes que suscribieron un pagaré en el que se hizo constar expresamente que los compradores comparecían como deudores hipotecarios solidarios. Véase *Campolieto*, 142 D.P.R. en la pág. 583.[2]

---

[2] Cabe destacar que, en el caso de *Campolieto*, no estábamos ante una paralización automática sino ante un descargo ("discharge"), el cual constituye una orden que impide la atribución de responsabilidad personal a un deudor que se somete a un procedimiento de quiebra. A diferencia de la paralización automática, el descargo se concreta en una etapa más avanzada en los procedimientos a nivel federal y opera como un interdicto permanente en contra los

En el presente caso, sin embargo, no nos encontramos ante una deuda u obligación de una comunidad postganancial, sino ante una obligación de la Sociedad Legal de Gananciales. Esto, puesto que el señor Fernández Ramos y la señora Guillén Lugo continúan casados. Precisamente por ello, la señora Guillén Lugo incluyó la reclamación judicial en cuestión en su petición de quiebra. Véase *Solicitud de Quiebra*, Apéndice, en la pág. 129.

## IV

Conforme a la interacción entre las disposiciones relativas a la paralización automática de procedimientos judiciales, la propiedad que compone el caudal de un deudor bajo el Código de Quiebras federal y la naturaleza de la Sociedad Legal de Gananciales como una entidad jurídica *sui generis* en nuestro ordenamiento, es preciso concluir que el foro apelativo intermedio erró al ordenar la continuación de los procedimientos en contra de los bienes privativos del señor Fernández Ramos. Como discutimos, estamos ante una deuda de la Sociedad Legal de Gananciales, cuyos bienes en la actualidad forman parte del caudal de quiebra en el foro federal. Por tanto, es improcedente permitir a un acreedor exigir a uno de los miembros de ese consorcio marital que pague la totalidad de la deuda, cuando, como señalamos, éste no responde

acreedores que interesen cobrar sus deudas del caudal del quebrado. Véase *La paralización automática de la Ley de Quiebras*, *supra*, pág. 6.

personalmente. Además, el foro apelativo intermedio erró al concluir que se trataba de un supuesto de solidaridad entre los cónyuges contratantes, pues es norma reiterada en nuestro ordenamiento que la solidaridad nunca se presume y debe consignarse expresamente para que surta efectos. Véase 31 L.P.R.A. sec. 3101.

Debido a que la obligación que nos ocupa le corresponde a la Sociedad Legal de Gananciales, y no a sus integrantes en su carácter personal, estoy conforme con que se decrete la paralización de todos los procedimientos de ejecución de sentencia, incluyendo aquellos que puedan ser dirigidos en contra de los bienes privativos del señor Fernández Ramos. Esto por entender que, al momento, la deuda que se intenta reclamar forma parte del caudal de quiebra y la paralización automática de cualquier reclamación judicial que pende sobre éste impide que un acreedor pueda indirectamente cobrar su deuda dirigiéndose en contra de los bienes privativos de uno de los integrantes de la Sociedad. Como anticipé, es lamentable que una mayoría de los integrantes de este Tribunal estén renuentes a pautar la norma que ha de regir en nuestro ordenamiento en cuanto a un asunto tan espinoso.


                                        Anabelle Rodríguez Rodríguez
                                                Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| HÉCTOR LUIS BÁEZ RIVERA, NANCY CASANOVA VÁZQUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>v.<br><br>VÍCTOR MANUEL FERNÁNDEZ RAMOS, VÍCTOR JOSÉ FERNÁNDEZ RAMOS, CARMEN AUREA FERNÁNDEZ RAMOS Y **VÍCTOR ROBERTO FERNÁNDEZ RAMOS**, SU ESPOSA TERESA GUILLÉN LUGO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Peticionario | **Núm.** CC-2013-0439 | *Certiorari* |

Opinión Disidente emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 10 de junio de 2015.

Por estar conforme con la Resolución y la Sentencia Enmendada emitidas por el Tribunal de Apelaciones el 12 de abril de 2013, y entender que los bienes privativos de los cónyuges responden subsidiariamente por deudas gananciales que hayan surgido como resultado de la conducta intencional grave de ambos, respetuosamente, disiento. Veamos.

I

A pesar de que la controversia que se presenta a través de este recurso es un tanto limitada, es menester repasar el trasfondo fáctico y procesal del litigio para poder resolverla.

El 2 de abril de 2005 el Sr. Héctor Luis Báez Rivera y la Sra. Nancy Casanova Vázquez (recurridos o compradores), conjuntamente con el Sr. Víctor Roberto Fernández Ramos (peticionario o señor Fernández) y su esposa, Sra. Teresa Guillén Lugo (señora Guillén) (en adelante los esposos Fernández-Guillén), suscribieron un contrato titulado "Recibos de Pagos y Conciliación de Hipoteca".[3]  Mediante este acuerdo, los recurridos adquirieron un solar de aproximadamente 2,500 metros cuadrados a ser segregados de una finca matriz heredada por el señor Fernández y sus hermanos.[4]

En el mencionado documento se incluyó la siguiente cláusula como "Nota Especial":

> Esta finca est[á] sujeta a ser segregada por los Compradores, o sea los gastos de los Ingenieros y de los Abogados, (segregación y los documentos legales que sean necesarios serán por cuenta de los compradores hasta independizar estos 2,500 Metros Cuadrados Aproximados (Ver Plano), de la finca principal de la cual será segregada).  Esto constituye el acuerdo principal de esta compraventa.

Las partes pactaron, además, que la escritura correspondiente sería otorgada cuando los compradores lo solicitaran.

El 9 de agosto de 2007 los recurridos presentaron una Demanda en contra de los esposos Fernández-Guillén solicitando el cumplimiento del contrato o, en la alternativa, la nulidad del contrato y el pago de daños y

---

[3]     Copia de este documento, así como copia de la Demanda y la Sentencia dictada el 16 de marzo de 2010, se obtuvieron del expediente del Tribunal de Primera Instancia.

[4]     A pesar de que originalmente se incluyeron los hermanos del señor Fernández como codemandados, esas reclamaciones no tienen injerencia con la controversia ante nuestra consideración.

perjuicios. Oportunamente, se celebró el juicio para ventilar las controversias planteadas y el Tribunal de Primera Instancia dictó Sentencia el 16 de marzo de 2010. Según se desprende de dicho dictamen, los compradores comenzaron a realizar los pagos acordados, construyeron una residencia en el solar recién adquirido, llevaron a cabo mejoras en la propiedad, y sembraron árboles y frutos menores. Igualmente, acudieron a las oficinas del Municipio de Caguas para someter la correspondiente solicitud de segregación. No obstante, allí se les informó que esto no era viable puesto que la zonificación del predio no lo permitía. Quedó establecido que de haber sabido que la segregación no era posible los recurridos no hubiesen comprado el solar.

De otra parte, conforme al testimonio creído por el juzgador, desde el año 2003, es decir, dos (2) años previos a la compraventa, los esposos Fernández-Guillén tenían pleno conocimiento de que el solar vendido no podría ser segregado debido a su zonificación agrícola.[5]

A base de la evidencia que le fue presentada, el juez de instancia resolvió que "las gestiones que hicieron los esposos Fernández-Guillén para venderle el solar a los demandantes, a sabiendas de que el mismo no podía segregarse, constituyen maquinaciones, tretas y engaños, que vician el

---

[5] Sentencia Tribunal de Primera Instancia (Sentencia TPI), Determinaciones de Hechos, párrs. 8 y 19.

consentimiento ofrecido por los demandantes en el contrato otorgado".[6]

Concluyó, por lo tanto, que los esposos Fernández-Guillén incurrieron en conducta dolosa tal que vició el consentimiento de los recurridos y provocó la nulidad del contrato. Dispuso igualmente que, al estar los esposos Fernández-Guillén imposibilitados de entregar la propiedad vendida por no poder segregarse, el contrato carecía de causa. A base de lo anterior, determinó que el señor Fernández, su esposa y la Sociedad Legal de Gananciales compuesta por ambos venían llamados a responder por los daños y perjuicios causados por el incumplimiento de los términos del contrato, según provisto en el Artículo 1054 del Código Civil, 31 LPRA sec. 3018 (1990) (Art. 1054 del Código Civil).[7]

A tono con sus hallazgos, el tribunal *a quo* ordenó la devolución de las contraprestaciones, así como el reembolso a los compradores de los gastos incurridos en la edificación, siembras y mejoras efectuadas de buena fe en el predio, con sus respectivos intereses, además de una indemnización de $100,000 a cada uno de los recurridos por concepto de daños y perjuicios.

Por último, el Tribunal de Primera Instancia impuso el pago de honorarios de abogado ascendentes a $50,000 por la

---

[6]    Sentencia TPI, Determinaciones de Hechos, párr. 16.
[7]    El Artículo 1054 del Código Civil, 31 LPRA sec. 3018 (1990) (Art. 1054 del Código Civil) dispone que "[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas".

actitud temeraria desplegada por los esposos Fernández-Guillén durante el trámite judicial. De este modo, la totalidad de la Sentencia sumó $352,468.[8]

Mediante Sentencia del 16 de diciembre de 2011, el Tribunal de Apelaciones esencialmente confirmó las determinaciones del foro primario, así como la responsabilidad del señor Fernández, su esposa y la Sociedad Legal de Gananciales compuesta por ellos, basado en su conducta contraria a las disposiciones del Art. 1054 del Código Civil. No obstante, clarificó que la nulidad del contrato provenía del dolo y no de la ausencia de causa en el contrato. De otra parte, redujo a $50,000 la compensación por concepto de daños y angustias mentales otorgada a cada uno de los recurridos y a $12,000 el monto de los honorarios de abogado concedidos por el foro primario. A base de las determinaciones del Tribunal de Apelaciones, la deuda total por concepto de la Sentencia en cuestión se redujo a $214,468.

El 3 de julio de 2012, ya advenida final y firme la determinación antes descrita, la señora Guillén presentó una petición acogiéndose a la protección del Capítulo 13 del Código de Quiebras federal (Código de Quiebras). En la

---

[8] Las cantidades otorgadas se resumen como sigue:

| | |
|---|---|
| Suma pagada por el solar | $ 7,800* |
| Limpieza y mantenimiento del solar | $ 22,000 |
| Siembras | $ 10,000* |
| Construcción de la residencia | $ 62,668* |
| Daños y angustias mentales del señor Báez | $100,000 |
| Daños y angustias mentales de la señora Casanova | $100,000 |
| Honorarios de abogado | $ 50,000 |
| TOTAL | $352,468 |

*Más intereses devengados desde la radicación de la Demanda.

solicitud no incluyó a su esposo, el señor Fernández. Surge de los documentos sometidos ante el Tribunal de Quiebras que se designó como deuda no asegurada y sin prioridad "*unsecured nonpriority claim*[]" la cantidad de $214,000 correspondiente a la Sentencia antes aludida.

En vista de los procedimientos de quiebra, el 4 de septiembre de 2012 el foro primario emitió una Resolución en la que ordenó la paralización de los procedimientos y se reservó jurisdicción para decretar su reapertura posteriormente. Más adelante, el tribunal de instancia acogió los planteamientos de los recurridos, según sometidos en una moción de reconsideración, por lo que el 25 de septiembre de 2012 emitió una Resolución Enmendada en la que dejó sin efecto parcialmente la paralización y permitió que continuaran los procedimientos con relación al señor Fernández y la sociedad legal de gananciales compuesta con su señora esposa.

Inconforme, el señor Fernández recurrió al Tribunal de Apelaciones. Inicialmente, el foro apelativo intermedio ordenó paralizar los procedimientos en su totalidad. Véase, Sentencia del 14 de febrero de 2013. No obstante, reconsideró su determinación y, mediante Resolución y Sentencia Enmendada del 12 de abril de 2013, dejó sin efecto la paralización decretada **únicamente respecto a los bienes privativos del señor Fernández**. De este modo, permitió que continuaran los trámites de ejecución en contra del señor Fernández para satisfacer con sus bienes propios el total de los dineros adeudados.

El señor Fernández acudió entonces ante este Foro.  El 25 de octubre de 2013 expedimos el auto de *certiorari* y, posteriormente, las partes sometieron sus respectivos alegatos.

## II

El peticionario aduce, primeramente, que erró el Tribunal de Apelaciones al considerar la deuda por Sentencia como una suya personal y llamarlo a responder solidariamente frente a los acreedores con su patrimonio privativo.

Indica, además, que de confirmarse la determinación recurrida se afectarían los pagos al Plan aprobado por el Tribunal de Quiebras, ya que parte de los ingresos provenientes de frutos y rentas de sus bienes privativos se utilizan para costearlo.

## III

**DERECHO APLICABLE**

**A. El Dolo**

El consentimiento de las partes es requisito esencial para la validez de un contrato.  Véase, Art. 1213 del Código Civil, 31 LPRA sec. 3391 (1990).  Tanto es así que, de encontrarse afectado, podrá ocasionar la nulidad del negocio jurídico.  Rodríguez Ramos *et al.* v. ELA *et al.,* 190 DPR 448, 455 (2014); S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 62-63 (2011); García Reyes v. Cruz Auto Corp., 173 DPR 870, 885-886 (2008); Pérez Rosa v. Morales Rosado, 172 DPR

216, 228-229 (2007); <u>Bosques v. Echevarría</u>, 162 DPR 830, 836 (2004).

El dolo aparece reseñado en el Código Civil como una de las posibles causas de vicio del consentimiento. Se define como el uso de "palabras o maquinaciones insidiosas de parte de uno de los contratantes [con el propósito de inducir al] otro a celebrar un contrato que, sin ellas, no hubiera hecho". Art. 1221 del Código Civil, 31 LPRA sec. 3408 (1990). Cabe distinguir el *dolus malus* o dolo grave que provoca la nulidad de la relación contractual del dolo incidental que únicamente da derecho a una indemnización en daños y perjuicios y no afecta la validez del acuerdo conforme estipula el Artículo 1222 del Código Civil, 31 LPRA sec. 3409 (1990) (Art. 1222 del Código Civil). Véanse: <u>S.L.G. Ortiz-Alvarado v. Great American</u>, *supra,* págs. 63-64; <u>Pérez Rosa v. Morales Rosado</u>, *supra*, págs. 229-230; <u>Bosques v. Echevarría</u>, *supra*, pág. 836; <u>Colón v. Promo Motors Imports, Inc.</u>, 144 DPR 659, 666-667 (1997).

**B. Sociedad Legal de Gananciales**

La sociedad legal de gananciales es el régimen económico que habitualmente regula la institución del matrimonio en Puerto Rico. <u>Montalván v. Rodríguez</u>, 161 DPR 411, 420 (2004). Tiene como característica principal el que los cónyuges figuran como codueños y administradores de todo el patrimonio matrimonial sin adscribírsele cuotas específicas a cada uno. <u>Roselló Puig v. Rodríguez Cruz</u>, 183 DPR 81, 93 (2011); <u>Montalván v. Rodríguez</u>, *supra*. Se le ha reconocido

como una entidad jurídica *sui generis*, separada y distinta de los cónyuges que la componen, aunque no cuenta con el mismo grado de personalidad jurídica característico de las sociedades ordinarias o entidades corporativas.  Reyes v. Cantera Ramos, Inc., 139 DPR 925, 929 (1996); Int'l Charter Mortgage Corp. v. Registrador, 110 DPR 862, 864 (1981).  El régimen ganancial opera independiente de los bienes personales de sus miembros.  Pauneto v. Núñez, 115 DPR 591, 597 (1984); García v. Montero Saldaña, 107 DPR 319 (1978). Es decir, el patrimonio individual de cada cónyuge funciona separado del de la sociedad, por lo que se "rechaza una norma de solidaridad entre los cónyuges y la sociedad".  Pauneto v. Núñez, *supra*, pág. 597.

**C. Deudas Gananciales**

Los Artículos 1308 y 1310 del Código Civil, respectivamente, regulan las responsabilidades y deudas de la sociedad legal de gananciales.  31 LPRA secs. 3661 y 3663 (1990) (Arts. 1308 y 1310 del Código Civil).  El Art. 1308 del Código Civil estipula, entre otros, que "las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges" se reputan gananciales.[9]  Este precepto

---

[9]    En lo pertinente, el Art. 1308 del Código Civil dispone lo siguiente:

Serán a cargo de la sociedad de gananciales:

(1)    Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.
(2)    Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.
(3)    Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges.  Las reparaciones mayores no serán de cargo de la sociedad.

comprende obligaciones incurridas por alguno de los esposos donde la masa ganancial resulta responsable en caso de incumplimiento. Orta v. Padilla Ayala, 131 DPR 227, 255 (1992). "El Art. 1308 [del Código Civil] trata sobre una obligación genérica de contenido patrimonial que confiere un derecho de crédito al acreedor contra el patrimonio del deudor, ejecutable por la vía forzosa en caso de incumplimiento". WRC Props., Inc. v. Santana, 116 DPR 127, 134 (1985).

A pesar de que le cobija una presunción de naturaleza ganancial, de ninguna manera puede entenderse que toda gestión obligatoria por parte de uno de los cónyuges vincula indefectiblemente a la sociedad de bienes gananciales por el mero hecho de estar casado bajo este régimen. A través de nuestra jurisprudencia hemos podido refinar los contornos de la responsabilidad ganancial según provista en el Art. 1308 del Código Civil. La naturaleza privativa o ganancial de la obligación dependerá de los hechos específicos de cada caso.

Así pues, para poder hacer esta determinación se examinarán los hechos particulares del caso a la luz de los criterios siguientes: (1)"la deuda u obligación debe servir a un interés de la familia y no estar predicada en un ánimo fraudulento u oculto de perjudicar a uno de los cónyuges […]";[10] (2) el cónyuge o la sociedad de bienes gananciales

---

(4)     Las reparaciones mayores o menores de los bienes gananciales.

(5)     El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.

(6)     Los préstamos personales en que incurra cualquiera de los cónyuges. 31 LPRA secs. 3661 (1990).

[10]     WRC Props., Inc. v. Santana, 116 DPR 127, 135 (1985).

que niegue responsabilidad tiene el peso de la prueba, y (3) si se logra controvertir la presunción, responderán los bienes gananciales subsidiariamente previa excusión de bienes, según provisto en el Art. 1310 del Código Civil.[11]

Debido a la presunción de que la deuda u obligación es una ganancial por haberse contraído durante la vigencia del matrimonio, corresponde al cónyuge que entiende que existe alguna de las excepciones antes mencionadas presentar la prueba necesaria para controvertirla y de este modo proteger el patrimonio ganancial en primera instancia.

Por su parte, el Art. 1310 del Código Civil establece como privativas las deudas contraídas por los cónyuges previo al matrimonio, así como las multas y condenas pecuniarias que le fuesen impuestas.[12] Las multas y condenas pecuniarias a las que se refiere este artículo incluyen la reparación de daños causados por culpa o negligencia. A. de Cossio y Corral, La Sociedad de Gananciales, Madrid, Instituto Nacional de Estudios Jurídicos, 1963, pág. 98.

Puig Brutau distingue la naturaleza de las deudas comprendidas en ambos artículos de la siguiente manera.

---

[11] íd.

[12] El Art. 1310 del Código Civil reza como sigue:

> El pago de las deudas contraídas por el marido o la mujer antes del matrimonio no estará a cargo de la sociedad de gananciales.

> Tampoco lo estará el de las multas y condenas pecuniarias que se les impusieren.

> Sin embargo, el pago de las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera la sec. 3661, si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados. 31 LPRA sec. 3663 (2009).

Mientras el primer inciso del "[Artículo] 1408 [correspondiente al Art. 1308 nuestro] […] protege la justa expectativa de quienes son acreedores por haber contratado voluntariamente con el marido […] el [A]rt. 1410 [correspondiente al Art. 1310 nuestro] contempla el caso de los acreedores que […] han pasado a serlo de manera involuntaria […]". J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1967, T. IV, Vol. I, pág. 712.

El Art. 1310 del Código Civil dispone, además, que **cuando la responsabilidad impuesta sea privativa, la sociedad de gananciales responde frente a un tercero de manera subsidiaria, previa excusión de bienes, cuando el cónyuge responsable no tenga bienes propios para responder, o su patrimonio no sea suficiente para satisfacer la deuda**. Quiñones López v. Manzano Pozas, 141 DPR 139, 169 (1996); Cruz Viera v. Registrador, 118 DPR 911, 915 (1987).

Se justifica el alcance subsidiario de los bienes gananciales dado la importancia de reparar el daño causado.

> "El precepto se presenta tan natural, que a primera vista no puede menos de sentirse su justicia. La sociedad no es la obligada al pago, pero median intereses legítimos, hay acreedores que no deben perder sus créditos, hay que reparar un mal o un daño, o indemnizar un perjuicio, y la ley, ante la carencia de bienes privativos del cónyuge deudor o responsable, y la existencia de gananciales sobrantes, ordena el pago, la reparación o la indemnización que procedan a costa de la sociedad, pero disponiendo que en su día se le descuente a ese cónyuge en su respectivo haber." J.M. Manresa, Comentarios al Código Civil Español, 6ta ed., Madrid, Ed. Reus, 1969, T. IX, pág. 769.

En casos de negligencia conforme al Artículo 1802 del Código Civil, la naturaleza de la obligación— ya sea

individual o ganancial —dependerá de los hechos que dieron su origen.   31 LPRA sec. 5141 (1990) (Art. 1802 del Código Civil).   Si la responsabilidad surge como parte de una actividad de beneficio para la masa ganancial ordinariamente la deuda se reputará ganancial.   Rosario v. Dist. Kikuet, Inc., 151 DPR 634, 646-647 (2000); Quiñones López v. Manzano Pozas, supra, pág. 167; Cruz Viera v. Registrador, supra, pág. 915; Asociación de Propietarios v. Santa Bárbara Co., 112 DPR 33, 49 (1982); García v. Montero Saldaña, supra, págs. 341-342.

**D. Culpa Contractual**

El factor determinante que distingue la culpa contractual predicada en el Art. 1054 del Código Civil de la extracontractual provista en el Art. 1802 del mismo código, consiste en la existencia de una relación previa entre la víctima y el causante del daño.  Las acciones ex contractu persiguen compensar daños derivados del incumplimiento de obligaciones pactadas, lo que necesariamente exige "que al daño le preceda una relación jurídica entre las partes concernidas".  Maderas Tratadas v. Sun Alliance et al., 185 DPR 880, 909 (2012); Ramos v. Orientalist Rattan Furnt., Inc., 130 DPR 712, 721 (1992).  Por su parte, las acciones ex delito surgen del principio de convivencia social de no causar daño a los demás y no se requiere que las partes estén ligadas por una relación jurídica anterior.  Maderas Tratadas v. Sun Alliance et al., supra, pág. 908; Ramos v. Orientalist Rattan Furnt., Inc., supra.

**E. Quiebra**

El Capítulo 13 del Código de Quiebras está diseñado para individuos que cuentan con ingresos regulares. Este esquema normativo persigue la rehabilitación económica del deudor, permitiéndole retener sus propiedades si demuestra capacidad de pagar, con sus ingresos futuros, aquellas cantidades fijadas por el Tribunal de Quiebras. 8 Collier on Bankruptcy Sec. 1300.02 (16ta ed. 2010).

Como resultado de la presentación de una petición de quiebra, surge un caudal ("*estate*") compuesto del patrimonio del deudor. En aquellas jurisdicciones en las que opera el régimen de sociedad legal de gananciales, se incluyen los intereses de ambos cónyuges en la masa ganancial como parte del caudal cuando el cónyuge deudor tiene cierto grado de control sobre los bienes gananciales. Véase, 11 USC sec. 541.[13] Esto ocurre aun en aquellos casos en que solamente uno de los cónyuges se haya acogido al procedimiento de quiebra. 1 Ginsberg & Martin on Bankruptcy Sec. 5.02[B] (5ta ed. Suppl. 2014-1).

---

[13] En lo pertinente, la Sección 541 del Código de Quiebras, dispone lo siguiente:

   (a) The commencement of a case […] creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

   (1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.
   (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

   (A) Under the sole, equal, or joint management and control of the debtor; or
   (B) Liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable. 11 USC sec. 541.

. . . . . . . .

Conforme lo dispuesto en la Sección 362 del Código de Quiebras, 11 USC sec. 362 (Sec. 362 del Código de Quiebras), **14** al someter la petición se paraliza automáticamente todo proceso judicial o extrajudicial de cobro de dinero en contra del deudor, incluyendo la ejecución de sentencias obtenidas previo al inicio del caso. **15** Peerless Oil v. Hnos. Torres Pérez, 186 DPR 239, 255 (2012); Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010). De esta manera se protege el caudal del deudor para el beneficio de los acreedores, a la vez que se le brinda resguardo de las gestiones de cobro. 3 Collier on Bankruptcy Sec. 362.03[4] (16ta ed. 2010).

El pago a los acreedores del deudor se hará según lo estipulado en un Plan aprobado por el Tribunal de Quiebras, el cual no podrá extenderse por un término mayor de cinco años. 11 USC sec. 1322(d). Al cabo de este periodo, si el deudor ha cumplido a cabalidad con sus términos, se le

---

**14** La Sección 362 del Código de Quiebras provee como sigue:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301 [Voluntary cases], 302 [Joint cases], or 303 [Involuntary cases] of this title… operates as a stay, applicable to all entities, of--

(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceedings against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title […]. 11 USC sec. 362 (Sec. 362 del Código de Quiebras).

. . . . . . . .

**15** Excepto en circunstancias muy particulares allí especificadas, la Sec. 362 del Código de Quiebras aplica a todos los casos bajo el mencionado código. En los procedimientos cubiertos por el Capítulo 13 se dispone, además, que queda suspendido el cobro de las deudas del consumidor a los codeudores de aquel que inició el proceso de quiebra, brindándole una protección adicional en este tipo de deuda siempre y cuando se cumplan ciertas condiciones. Véase, 11 USC sec. 1301.

concede el descargo ("*discharge*") de las deudas comprendidas en el Plan que no estén regidas por alguna exención o excepción provista por el Código de Quiebras. 11 USC sec. 1328; 2 <u>Ginsberg & Martin on Bankruptcy</u> Sec. 15.05[D] (5ta ed. Suppl. 2012) y Sec. 15.06[B] (Suppl. 2013-3).

Una vez se ordena el descargo, entra en vigor un *injunction* permanente conforme dispone la Sección 524(a) del Código de Quiebras, 11 USC sec. 524(a),[16] el cual sustituye la paralización inicial provista en la Sec. 362 del Código de Quiebras. Este interdicto opera sobre los bienes futuros del deudor, tanto privativos como gananciales, y le exime a perpetuidad del **cobro** de las deudas descargadas. 3 <u>Collier on Bankruptcy</u> Sec. 362.06[2] (16ta ed. 2010); 1 <u>Ginsberg & Martin on Bankruptcy</u> Sec. 3.07[B] (5ta ed. Suppl. 2013-1).

El efecto del descargo se limita a proteger al **deudor**, tanto en su patrimonio privativo como la masa ganancial. Consiguientemente, **no** elimina las deudas que fueron objeto de descargo en el proceso de quiebra; éstas subsisten. R.H.

---

[16] La Sección 524 del título 11 del USC establece:

(a) A discharge in a case under this title--

 (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged […];

 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor […] and

 (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge […].

. . . . . . . .

Heston, Discharge, what Discharge, 42-Dec. Orange County Law, 36 (2000).

Como resultado, nada impide a los acreedores cobrar su acreencia de propiedad privativa del cónyuge que no se acogió a quiebra si la ley local lo permite. 1-4 Collier Family Law and the Bankruptcy Code Sec. 4.8. En otras palabras, la protección del Código de Quiebras carece de efecto alguno sobre el cónyuge que no se acogió a quiebra en su carácter individual y en sus bienes privativos. Campolieto v. Anaya, 142 DPR 582, 592 (1998). "Because the nondebtor spouse is not personally discharged, his separate property remains liable for all debts for which he is personally liable". J. Henderson, For Better or for Worse: Liability of Community Property after Bankruptcy, 29 Idaho L. Rev. 893, 902 (1992-1993) (cita omitida). "Section 524(a)(3) […] is not a discharge of personal liability for the nonfiling spouse". In re Moore, 318 BR 679, 681 (Bankr. W.D. Wis. 2004) (citando In re Schmiedel, 236 BR 393, 398 (Bankr. E.D. Wis. 1999)).

**IV**

**DISCUSIÓN**

**A. Primer Error**

En esencia, el peticionario arguye que: (1) no existe solidaridad en este caso entre la sociedad legal de gananciales y sus miembros, así como que (2) la deuda por Sentencia es una estrictamente ganancial, regida por el Art. 1308 del Código Civil, por lo que sus fondos privativos no pueden ser llamados a responder.

La Resolución del Tribunal de Apelaciones, fechada el 12 de abril de 2013, la cual estamos llamados a revisar, primeramente concluye que la deuda constituye una obligación personal privativa del señor Fernández que podría estar sujeta al cobro de los bienes gananciales por medio del mecanismo de excusión provisto en el Art. 1310 del Código Civil. A la vez, le impone responsabilidad solidaria a su esposa por ser cocausante del daño, así como a la sociedad legal de gananciales. Resolución del Tribunal de Apelaciones, pág. 2. Explica el foro apelativo intermedio que al señor Fernández le corresponde pagar, puesto que vendió su finca privada y la obligación por incumplimiento de contrato es suya personal. Sin embargo, concluye que, igualmente, son responsables solidariamente su esposa y la sociedad legal de gananciales. A esos efectos resuelve:

> Por lo tanto, el señor Fernández Ramos responde con todo su patrimonio personal de la sentencia dictada en su contra en el litigio de daños y perjuicios. El monto de su responsabilidad es por la totalidad por ser uno de los co causantes del daño, a saber, el señor Víctor Fernández Ramos, la señora Teresa Guillén Lugo, y la Sociedad Legal de Gananciales compuesta por ambos, a los cuales se le impone responsabilidad solidaria. Íd., págs. 5-6.

Partiendo de la premisa que tenemos ante nuestra consideración una deuda por daños a tenor del Art. 1054 del Código Civil, forzosamente hay que concluir que se trata de una obligación de naturaleza contractual cubierta por el Art. 1308 del Código Civil. [17] De otra parte, existe una

---

[17] Debido a que la Sentencia original del Tribunal de Primera Instancia, según modificada por el Tribunal de Apelaciones, advino final y firme, no pasamos juicio sobre la utilización del Art. 1054 del Código Civil para otorgar indemnizaciones procedentes de la nulidad de un contrato a causa de dolo grave, ni sobre el monto de las cuantías concedidas.

presunción de que las obligaciones contraídas por los cónyuges durante la vigencia del matrimonio son gananciales y corresponde al cónyuge que rechace tal responsabilidad así probarlo. WRC Props., Inc. v. Santana, *supra*, pág. 135.

En este caso no se ha dado tal cuestionamiento de parte de alguno de los cónyuges, por lo que no existe motivo para rechazar la naturaleza ganancial de la deuda. El peticionario apoya su recurso sobre la base ganancial de la deuda por Sentencia, mientras que la señora Guillén incluyó la totalidad de la obligación en su petición ante el Tribunal de Quiebras. Siendo así, se reputa ganancial y son los bienes gananciales los llamados a responder por los dineros fijados por el tribunal. "Para reclamar una deuda de carácter ganancial, debe el acreedor dirigirse contra los bienes gananciales, esto es, demandar a la sociedad". Pauneto v. Núñez, *supra*, pág. 595 (cita omitida).

De otra parte, es preciso señalar que, contrario a lo intimado por el foro apelativo intermedio en su Resolución del 12 de abril de 2013, en el caso de deudas gananciales **no** existe disposición estatutaria que provea un mecanismo que permita cobrar subsidiariamente del patrimonio privativo de sus miembros. De conformidad con el Código Civil, la excusión de bienes opera únicamente en virtud de su Art. 1310. Es decir, se limita a aquellas situaciones en que no haya suficientes haberes **privativos** disponibles para cubrir obligaciones particulares de uno de sus miembros. Es únicamente entonces que la masa ganancial viene llamada a

responder subsidiariamente, pero condicionado a que se cubran primeramente ciertas necesidades gananciales básicas.

Igualmente, el hecho de que la deuda se repute ganancial no convierte a los miembros de la sociedad legal de gananciales en codeudores solidarios de esta entidad jurídica como indicó el Tribunal de Apelaciones. Es preciso recordar que durante la vigencia del matrimonio el patrimonio ganancial coexiste independiente de los bienes privativos de los cónyuges. Por lo tanto, sus respectivas obligaciones y haberes se mantienen separados lo que imposibilita que surja la solidaridad entre ellos.

En este caso, tanto el patrimonio ganancial de los esposos Fernández-Guillén, como el personal de la señora Guillén, están amparados por el procedimiento de quiebra. Es decir, los acreedores se ven imposibilitados de acceder a los fondos privativos de la señora Guillén, así como a los comunes gananciales para hacer válida la Sentencia que pesa en su contra.

Los bienes privativos del señor Fernández no comparten esta protección. Conforme la doctrina, podrían responder en la medida en que éste sea personalmente responsable de la deuda que se intenta cobrar. Esto es, en caso de una obligación particular independiente de aquellas que le corresponden en calidad de miembro de la sociedad ganancial como sería, por ejemplo, una situación de responsabilidad solidaria según atendimos en Campolieto v. Anaya, *supra*.

Conforme a la prueba, quedó establecido que, a pesar de que los esposos Fernández-Guillén conocían de antemano la

imposibilidad de segregar el solar, no divulgaron este dato a los compradores antes de suscribir el contrato en cuestión. Por el contrario, les impusieron a los compradores la obligación de tramitar el permiso de segregación de la parcela adquirida. Tanto el señor Fernández como la señora Guillén firmaron el documento conjuntamente. Igualmente, surge que los recurridos no hubiesen comprado la propiedad de haber conocido este impedimento con anterioridad a suscribir el contrato.

En consonancia con lo anterior, los esposos Fernández-Guillén incurrieron en conducta dolosa grave. Es decir, participaron en los actos deliberados que propiciaron el vicio en el consentimiento de los recurridos y la eventual nulidad del negocio. De este modo, se conjugaron los requisitos cardinales del dolo grave que provocan la captación del consentimiento en la formación del contrato y permiten su nulidad, según dispone el Art. 1222 del Código Civil. A base de ello, entendemos que la conducta dolosa antes descrita sobre la cual se asienta la reclamación en este caso no debe quedar impune. Las circunstancias exigen que concibamos medidas especiales de justicia y equidad para atender los perjuicios sobrevenidos a los recurridos como resultado de la nulidad contractual que, de otro modo, quedarían al descubierto aun cuando existan haberes en el patrimonio privativo. "La equidad, como se sabe, quiere decir algo que es justo". Silva v. Comisión Industrial, 91 DPR 891, 898 (1965). Después de todo, nuestra función de impartir justicia va de la mano con la equidad, principio que

permea todo el derecho. S.L.G. Sánchez v. S.L.G. Valentín, 186 DPR 503, 515 (2012). "La equidad nació precisamente de la necesidad de atemperar el rigor de la norma, mediante un recurso a la conciencia del juzgador". CMI Hospital v. Depto. de Salud, 171 DPR 313, 325 (2007) (citas omitidas). Véase, además, BPPR v. Sucn. Talavera, 174 DPR 686, 695 (2008).

En situaciones extremas como la presente, no existe justificación para que uno de los esposos se escude detrás del manto ganancial con el propósito de evitar responder con sus bienes privativos por daños deliberadamente ocasionados mediante sus propios actos. Opinamos, por lo tanto, que en escenarios de responsabilidad ganancial por la conducta intencional grave de los esposos que resulte en el menoscabo de derechos, el perjudicado tiene la potestad de reclamar el resarcimiento de sus daños subsidiariamente de los bienes privativos de los cónyuges.[18]

Considero, por lo tanto, que el señor Fernández está obligado a responder con sus bienes privativos por el pago de la deuda impuesta por la Sentencia emitida en su contra. La naturaleza de la conducta desplegada en este caso exige tal resultado.

Una vez fijado que su patrimonio responde por la acreencia al descubierto, surge la interrogante de si el señor Fernandez debe pagar la totalidad de la deuda. Ambos

---

[18] En el supuesto en que uno solo de los cónyuges haya incurrido en tal conducta, el cónyuge inocente puede tratar de rebatir la presunción de ganancial de la obligación bajo los parámetros mencionados en WRC Props., Inc. v. Santana, supra.

cónyuges incurrieron, conjuntamente, en la conducta dolosa que ocasionó los daños consignados en la Sentencia. El fallo del tribunal de instancia no aquilató sus respectivas culpas y tampoco estamos nosotros en posición de hacerlo. Por lo tanto, bajo las circunstancias particulares que se nos presentan, la responsabilidad de los esposos Fernández-Guillén en su carácter privativo frente a los recurridos es necesariamente solidaria.

Sin embargo, habida cuenta de que estamos trazando nuevos rumbos guiados por la equidad, deben hacerse ajustes para lograr un resultado justo para ambas partes en el caso. Resultaría oneroso imponerle toda la carga al señor Fernández cuando no procedió solo. De otra parte, de satisfacer la totalidad de la Sentencia, el señor Fernández estaría imposibilitado de recuperar dinero alguno de su cónyuge como secuela de las disposiciones del Código de Quiebras. Tomando en consideración lo anterior, como cuestión de justicia para todas las partes concernidas, opino que el señor Fernández debe responder con sus bienes privativos hasta un cincuenta por ciento (50%) de la deuda por Sentencia que se intenta cobrar en este caso.[19]

## B. Segundo Error

Como segundo error, el señor Fernández alega que parte de los ingresos provenientes de los frutos y rentas de sus bienes privativos se utilizan para costear el Plan aprobado

---

[19] Claro está, deberá acreditarse a la deuda por cobrar cualquier abono efectuado como parte del procedimiento de quiebra.

por el Tribunal de Quiebras.[20]  A base de ello, argumenta que no es permisible la ejecución de su patrimonio personal para el cobro de la deuda en este caso puesto que, de hacerlo, se verían afectados los términos del Plan.  No nos convence su planteamiento.

Primeramente, el peticionario no ha citado base legal alguna en apoyo a su posición.  Tampoco ha sometido evidencia que demuestre que el Tribunal de Quiebras haya, en efecto, condicionado de manera alguna la disposición de sus haberes privativos.  Según mencionamos anteriormente, los bienes personales del señor Fernández no se encuentran entre aquellos comprendidos en el caudal de quiebra o protegidos por el *injunction* asentado en la orden de descargo.  Por el contrario, tal como discutimos anteriormente, sus bienes privativos están al margen del proceso de quiebra.

En virtud de lo dispuesto en la Sección 541 del Código de Quiebras, *supra*, el efecto del interdicto prescrito inicialmente por la Sec. 362 del Código de Quiebras y, posteriormente por la Sección 524, beneficia al cónyuge no acogido a quiebra **únicamente respecto de su participación en el caudal ganancial**.  Y así debe de ser, ya que éste no acudió al Tribunal de Quiebras a buscar protección de sus acreedores.  Por lo tanto, al no acogerse al procedimiento de quiebra, los bienes privativos del señor Fernández están

---

[20]  El Código Civil establece como gananciales "[l]os frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges".  Art. 1301(3), 31 LPRA sec. 3641(3) (1990).

aptos para responder por aquellas deudas que subsistan en la medida en que el Derecho local así lo permita.

**V**

Por los fundamentos expuestos, disiento respetuosamente del curso seguido por este Tribunal.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado